UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOMMY HARRIS, | |
| Plaintiff/Counterdefendant, | |
| v. | Case No. 20-cv-72-JPG |
| DURHAM ENTERPRISES, INC., and DON DURHAM, | |
| Defendants/Crossclaim Plaintiff/ Crossclaim Defendants, | |
| and | |
| LIBERTY MUTUAL INSURANCE COMPANY, | |
| Defendant/Crossclaim Defendant | |
| and | |
| OHIO SECURITY INSURANCE COMPANY, | |
| Defendant/Counterplaintiff/Crossclaim Plaintiff/Crossclaim Defendant, | |
| and | |
| OHIO SECURITY INSURANCE COMPANY, | |
| Defendant/Counterplaintiff/Crossclaim Plaintiff. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of defendant Ohio Security Insurance Company ("OSIC") to dismiss the crossclaims of defendants Durham Enterprises, Inc. and Don Durham (collectively, "the Durham defendants") (Doc. 37) pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 43). Defendant Liberty Mutual Insurance Company ("LMIC") has asked to join the motion (Doc. 44), which the Court will allow. Henceforth, the Court will refer

to the insurers collectively as "OSIC."  The Durham defendants have responded to the motion (Doc. 60), and OSIC has replied to that response (Doc. 62).

## I.      Standard for Dismissal

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level.  *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal,*  556 U.S. at 679.

## II.     Facts

Accepting all allegations in the Durham defendants' counterclaims as true, the Court finds the following facts for the purpose of this motion.

This case springs from injuries suffered by plaintiff Tommy Harris after becoming infected from a catheter at a dialysis center for which the Durham defendants provided commercial cleaning services.  Harris first brought a claim against the Durham defendants (using

their d/b/a name, City Wide Maintenance of St. Louis) in the First Amended Complaint filed in Case No. 17-L-7 in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, on April 19, 2017.  The certificate of merit attached to the First Amended Complaint indicates that Harris suffered from bacterial sepsis.

The Durham defendants tendered the defense to OSIC, which had issued a commercial package insurance policy including commercial general liability coverage to the Durham defendants covering the relevant period.  The Durham defendants also provided it a copy of the First Amended Complaint and its attachments.  On May 15, 2017, OSIC denied coverage and refused the defense, citing the bacteria policy exclusion.

The Circuit Court severed Harris's case against the Durham defendants into a new lawsuit—this lawsuit, State Case No. 19-L-234—and held a bench trial in the new case on July 30, 2019.  At trial, the Durham defendants informed the court that they had agreed with Harris that they would not mount a defense to the case and that, in turn, Harris would limit its recovery and would not seek to execute any judgment against Harris but would instead pursue the judgment only against the Durham defendants' insurer.  The Circuit Court entered judgment in Harris's favor in the amount of approximately $2 million, finding that the Durham defendants were negligent in cleaning the dialysis facility.  That order further found facts and drew legal conclusions adverse to "Ohio Security/Liberty Mutual Insurance Company," even though they were not parties to the case.  Specifically, the Circuit Court found that OSIC had a duty to defend the Durham defendants in Harris's lawsuit and that it was too late for OSIC to seek a declaration otherwise.

On December 7, 2019, nearly two months after entry of judgment in the severed state court Case No. 19-L-234 against the Durham defendants, Harris amended his complaint in that

3

case realleging the claims already decided in the bench trial and adding new declaratory judgment claims for insurance coverage against OSIC.  Believing that all plaintiffs were diverse from all defendants and that more than $75,000 was in issue, OSIC removed the case to federal court based on the Court's original diversity jurisdiction.

Once in federal court, the Durham defendants' filed crossclaims against OSIC for bad faith (Crossclaim Count I), for breach of fiduciary duties (Crossclaim Count II), and for punitive damages (Crossclaims Count III).  OSIC seeks to dismiss those crossclaims on the grounds that no such tort claims are viable under Missouri law, which all parties agree applies to this case. The Durham defendants dispute that Missouri law prohibits the causes of action they have plead. They further claim that OSIC is collaterally estopped by the state court judgment entered earlier in this case from contesting its duty to defend the Durham defendants.  OSIC thinks that is nonsense.

## III.    Analysis

### A.    Crossclaim Count I:  Bad Faith

The Durham defendants accuse OSIC of exercising bad faith when they refused to defend or indemnify the Durham defendants against Harris's claims in this lawsuit which, the Durham defendants assert, where covered by OSIC's insurance policy.  They also vaguely allege OSIC failed to properly investigate, negotiate and resolve Harris's claims against the Durham defendants.  OSIC argues that there is no such claim under Missouri law, which recognizes only a breach of contract claim for an insurer's failure to defend or indemnify where an insurance policy requires it.

OSIC is correct that Missouri law does not recognize a cause of action for bad faith failure to defend and indemnify an insured other than for breach of the insurance contract.  *See*

*Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 972 (8th Cir. 1999) ("We conclude the

Missouri Supreme Court would not recognize a new, independent cause of action sounding in

tort that would permit an award of punitive damages for a liability insurer's 'bad faith refusal to

defend.'").  The United States District Court for the Western District of Missouri has

summarized Missouri law in this regard:

> Under Missouri law, "[a] liability insurer. . . has two distinct duties, the duty to
> indemnify the insured for covered losses, and the duty to defend the insured in
> any lawsuit seeking damages that would be covered losses."  *Esicorp, Inc.*, 193
> F.3d at 969.  Each of these duties arise, if at all, from the insurance policy, in that
> if there is no coverage for the underlying claim, then there is neither a duty to
> defend nor a duty to indemnify.  *City of Lee's Summit v. Mo. Pub. Entity Risk
> Mgmt.*, 390 S.W.3d 214, 219 (Mo. Ct. App. 2012).  Thus, "an insurance
> company's denial of coverage itself is actionable only as a breach of contract and,
> where appropriate, a claim for vexatious refusal to pay," but not as a separate tort
> claim.  *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 69 (Mo. 2000) (en banc).
> . . .

*Cincinnati Ins. Co. v. Missouri Highways*, No. 4:12-CV-01484-NKL, 2013 WL 12097460, at *1

(W.D. Mo. Nov. 4, 2013); *see Wood v. Foremost Ins. Co.*, 477 F.3d 1027, 1029 (8th Cir. 2007)

(citing *Overcast*, 11 S.W.3d at 68).  Thus, under Missouri law, an insured cannot convert a

breach of an insurance policy claim for failure to defend into a tort claim.  *Wood*, 477 F.3d at

1029; *Missouri Highways*, 2013 WL 12097460, at *1.

It may, however, bring a breach of contract claim, and since the Court is not bound by the

labels the parties stick on their claims, *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir.

2011) (specifying an incorrect legal theory is not fatal to a claim as long as relief is possible

under any theory), the Court construes Crossclaim I as a breach of contract claim.

OSIC's liability for the Durham defendants' claim for breach of the contract to defend is

not preordained by the Circuit Court's coverage decision in this case.  As a preliminary matter,

that decision *was in this same case*, and the Court always has the discretion to revisit decisions in

the same case before entry of final judgment, although the law of the case doctrine discourages it

absent a compelling reason. *See* Fed. R. Civ. P. 54(b) (providing a non-final order "may be

revised at any time before the entry of a judgment adjudicating all the claims and all the parties'

rights and liabilities"); *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir.

2006).

Nor is the Durham defendants' breach of contract claim decided by the doctrine of

collateral estoppel. "Under collateral estoppel, once an issue is actually and necessarily

determined by a court of competent jurisdiction, that determination is conclusive in subsequent

suits based on a different cause of action involving a party to the prior litigation." *Montana v.*

*United States*, 440 U.S. 147, 153 (1979). This rule promotes conclusive resolution of disputes,

protects adversaries from the expense and vexation of multiple lawsuits, conserves judicial

resources and reduces the chance for inconsistent decisions. *Id.* at 153-54. For the doctrine to

apply, four factors must be present:

> (1) the issue sought to be precluded must be the same as that involved in the prior
> litigation, (2) the issue must have been actually litigated, (3) the determination of
> the issue must have been essential to the final judgment, and (4) the party against
> whom estoppel is invoked must be fully represented in the prior action.

*Matrix IV, Inc. v. American Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011)

(internal quotations omitted).

Collateral estoppel simply does not apply to the Circuit Court's decision that OSIC owed

a duty to defend the Durham defendants under the insurance policy and cannot now argue

otherwise. At the time of that decision, OSIC was not a party to the action and its interests were

not adequately represented. Furthermore, the issue of its duties under the insurance policy was

not essential to the decision that the Durham defendants were liable to Harris to the tune of $2

million. The Circuit Court's findings that OSIC had a duty to defend the Durham defendants in

6

Harris's lawsuit and that it was too late for OSIC to seek a declaration otherwise simply have no binding effect in front of this Court.

It is true that OSIC may be stuck with the $2 million verdict against its insured and runs the risk that, if it does have a duty to defend or indemnify, it may be responsible for this amount plus the cost of the Durham defendant's defense.  Under Missouri law, "by refusing to defend, the insurer gives up its contractual right to control the defense of the underlying action and frees the insured to negotiate a reasonable settlement with the plaintiff."  *Esicorp*, 193 F.3d at 970. Indeed,

> [T]he insurer's unjustified refusal to defend upon the ground that the claim is not covered by the policy relieves the insured from the contractual obligation not to settle so that the insured is free to go its own way, and to make a reasonable settlement or compromise without the loss of the right to recover on the policy.

*Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 480 (Mo. Ct. App. 1992).  The insured can then recover from an insurer who wrongfully refused to defend it the amount of the settlement, plus attorney's fees and other costs in defending the insured, unless it was the product of collusion or bad faith.  *Esicorp*, 193 F.3d at 970, 972; *Missouri Highways*, 2013 WL 12097460, at *3; *see Missouri Prop. & Cas. Ins. Guar. Ass'n v. Pott Indus.,* 971 S.W.2d 302, 306 (Mo. 1998) (*en banc*); *Whitehead*, 844 S.W.2d at 481 (an unjustified refusal to defend "renders the insurer liable to the insured for all resultant damages from that breach of contract"); *Landie v. Century Indem. Co.*, 390 S.W.2d 558, 562 (Mo. Ct. App. 1965).  This rule also applies to a court's finding of liability after a trial, but the verdict is not subject to the reasonableness requirement.  *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 709 (Mo. 2011).

While this Court is not bound by the Circuit Court's decision that OSIC breached the duty to defend, it cannot say definitively that it has *not* breached that duty.  Thus, the Court cannot dismiss that contention for failure to state a claim for breach of contract.  Whether there

was a breach turns Missouri law, which holds that, if the facts known at the outset of the case reveal a claim potentially within the insurance policy coverage, the insurer must provide a defense to the insured. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.,* 989 S.W.2d 168, 170 (Mo. 1999) (*en banc*). Whether a claim is potentially within the policy coverage is primarily determined by comparing the language of the insurance policy with the allegations in the pleading, *id.*, although if other facts become known showing potential coverage, the insurer must defend, *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005) (citing *King v. Cont'l W. Ins. Co.,* 123 S.W.3d 259, 264 (Mo. Ct. App. 2003)). The insured bears the burden of showing coverage, while the insurer bears the burden of showing an exclusion applies. *Prairie Framing*, 162 S.W.3d at 80.

The Court has reviewed the language of the policy and Harris's First Amended complaint in Case No. 17-L-7, which the Durham defendants first tendered to OSIC (including its exhibits). The Court concludes that the Durham defendants have pled a set of facts in this case plausibly suggesting they have a right to relief for breach of the contract to defend and to indemnify them against Harris's claims. Thus, the Durham defendants may continue to litigate the coverage breach of contract claim in this forum.

      B.      <u>Crossclaim Count II:  Breach of Fiduciary Duties</u>

In Count II, the Durham defendants accuse OSIC of violating several specific duties within the general duty of good faith, including the duty to defend, obtain a liability releases, and to pay the amount of the Durham's defendants' liability.

The elements of a breach of fiduciary duty under Missouri law are "(1) the existence of a fiduciary relationship between the parties, (2) a breach of that fiduciary duty, (3) causation, and (4) harm." *Dairy Farmers of Am., Inc. v. Travelers Ins. Co.*, 292 F.3d 567, 572 (8th Cir. 2002).

Where the fiduciary relationship is between an insured and its insurer, a claim for breach of fiduciary duty "must go beyond the mere denial of coverage under the insurance policy," which simply amounts to a breach of the insurance contract. *Cincinnati Ins. Co. v. Missouri Highways*, No. 4:12-CV-01484-NKL, 2013 WL 12097460, at *4 (W.D. Mo. Nov. 4, 2013) (citing *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67-69 (Mo. 2000) (*en banc*)). The Court has found Crossclaim Count I to be just such a breach of contract claim. "Attaching additional tort liability to a breach of contract claim is only allowed when an independent tort has been committed against the plaintiff. . . [that is not] dependent on the elements of the contract claim. Independent facts must form the basis for the tort claim to survive a motion to dismiss." *Hullverson Law Firm, P.C. v. Liberty Ins. Underwriters, Inc.*, No. 4:12-CV-1994 CAS, 2013 WL 3802517, at *1 (E.D. Mo. July 22, 2013) (internal citations and quotation marks omitted).

Crossclaim Count II attempts to add some additional allegations regarding how the Durham defendants believe OSIC should have substantively handled the case had it assumed the defense—secured releases, notified them of their exposure, provided a defense, paid the Circuit Court's award against the Durham defendants, and hired independent legal counsel. However, even construing Crossclaim Count II broadly, these allegations amount to nothing more than the allegations supporting Crossclaim Count I for breach of contract. It alleges no independent facts to form the basis of a separate tort suit. *See, e.g., Hullverson*, 2013 WL 3802517, at *2. The Court therefore finds Crossclaim Count II fails to allege an independent tort claim.

The Court believes, however, that the Durham defendants may be able to amend their pleading to allege a tort claim for bad faith failure to settle Harris's claim which would be, of course, dependent on there being a duty to defend in the first place as alleged in Crossclaim Count I. The breach of the contract to defend claim recognized in Crossclaim Count I is

9

distinguishable from the claim of bad faith *failure to settle* a claim by a third party within the policy limits, which indeed is a tort claim.  *See Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co.*, 449 S.W.3d 16, 25 (Mo. Ct. App. 2014) (citing *Shobe v. Kelly,* 279 S.W.3d 203, 212 (Mo. Ct. App. 2009); *Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 971-72 (8th Cir. 1999); *Cincinnati Ins. Co. v. Missouri Highways*, No. 4:12-CV-01484-NKL, 2013 WL 12097460, at *2 (W.D. Mo. Nov. 4, 2013) (citing *Mendota Ins. Co. v. Hurst*, 965 F. Supp. 1282, 1287 (W.D. Mo. 1997)).  The Missouri Supreme Court has explained:

> In such cases, the insurance company is held to a duty to act in good faith to protect the interests of its insured, separate from a simple obligation to pay the insured a benefit under the contract.  The insurance company incurs liability exposure in such "bad faith" claims when the company refuses to settle a claim within the policy limits and the insured is subjected to a judgment in excess of the policy limits as a result of the company's bad faith in disregarding the interests of its insured in hopes of escaping its responsibility under the liability policy.

*Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67-68 (Mo. 2000) (*en banc*) (citing *Zumwalt v. Utilities Ins. Co.,* 228 S.W.2d 750 (Mo. 1950)).

If an insurer acts in bad faith in refusing to settle, it is then exposed to liability for the full amount of an adverse judgment even if it exceeds the policy limits.  *Duncan v. Andrew Cty. Mut. Ins. Co.*, 665 S.W.2d 13, 18 (Mo. Ct. App. 1983); *Landie v. Century Indem. Co.*, 390 S.W.2d 558, 565-66 (Mo. Ct. App. 1965); *see Zumwalt*, 228 S.W.2d at 753.  Indicia of bad faith include such things as:  "failing to fully investigate a third-party claimant's injuries or recognize their severity, ignoring that a verdict could exceed policy limits, refusing to consider a settlement offer, and not keeping an insured informed of settlement offers or the risks of an excess judgment."  *Shobe*, 279 S.W.3d at 211.  Even an insurer that declines to defend an insured may be liable for the tort of bad faith failure to settle.  *Landie*, 390 S.W.2d at 565-66; *Missouri Highways*, 2013 WL 12097460, at *2.

The Court believes the Durham defendants may be able to plead facts to state such a claim in Crossclaim Count II. The Court acknowledges that there is some dissonance in the maintenance of a breach of contract claim for failure to defend and a tort claim for bad faith failure to settle where the insurer declined to defend the case in the first place. *See Landie*, 390 S.W.2d at 561 (colorfully referring to the conundrum as "the double-barrelled proposition of refusal to defend and refusal to settle"). But Missouri courts have resolved this apparent discrepancy by finding that an insurer who refuses to defend at all should not end up in a better place than an insurer who defends but exercises bad faith in failing to settle. *Id.*

C.    Punitive Damages

A claim for punitive damages is not an independent claim, although punitive damages may be available as a remedy for a bad faith failure to settle claim if "the defendant maliciously, willfully, intentionally or recklessly injured the plaintiffs." *Zumwalt v. Utilities Ins. Co.*, 228 S.W.2d 750, 756 (Mo. 1950). As an independent cause of action, though, it must be dismissed.

IV.    **Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** LMIC's motion to join OSIC's motion to dismiss (Doc. 44);

- **GRANTS in part** and **DENIES in part** OSIC and LMIC's motion to dismiss (Doc. 43);
  - The motion is **GRANTED** to the extent it seeks dismissal of tort claims and a punitive damages claim attempted to be pled by the Durham defendants in their crossclaim;
  - The motion is **DENIED** to the extent it seeks dismissal of a breach of contract claim, which the Court has construed to be included in Count I;

- **DISMISSES** Crossclaim Count II **without prejudice** to an amended tort claim;

- **ORDERS** that the Durham defendants shall have 21 days from entry of this order to file an amended pleading clarifying its breach of contract claim consistent with this order and repleading a tort claim for bad faith failure to settle;

- **DISMISSES** Crossclaim Count III **with prejudice** as an independent cause of action;

11

and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The only remaining crossclaim of the Durham defendants against OSIC is the breach of contract

claim in Crossclaim Count I.

**IT IS SO ORDERED.**
**DATED:  October 26, 2020**

<u>s/ J. Phil Gilbert      </u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**