## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| TOMMY HARRIS, | ) | |
|       Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
|      v. | ) | |
| | ) | |
| DURHAM ENTERPRISES, INC. and DON DURHAM, | ) | |
| | ) | No.  3:20-CV-00072-JPG |
|       Defendants/Crossclaim Plaintiffs/ | ) | |
|       Crossclaim Defendants, | ) | Honorable J. Phil Gilbert |
| | ) | |
|    and | ) | |
| | ) | CJRA Track:  B |
| LIBERTY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
|       Defendant/Crossclaim Defendant, | ) | |
| | ) | |
|    and | ) | |
| | ) | |
| OHIO SECURITY INSURANCE COMPANY, | ) | |
| | ) | |
|       Defendant/Counterclaim Plaintiff/ | ) | |
|       Crossclaim Plaintiff/ | ) | |
|       Crossclaim Defendant, | ) | |
| | ) | |
|    and | ) | |
| | ) | |
| THE OHIO CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
|       Intervenor Defendant/Crossclaim | ) | |
|       Plaintiff/Counterclaim Plaintiff. | ) | |

## INSURER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM IN SUPPORT THEREOF

Matthew O. Sitzer (*msitzer@shb.com*)
Matthew C. Wolfe (*mwolfe@shb.com*)
Peter F. O'Neill (*pfoneill@shb.com*)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, Illinois  60606
Telephone:    (312) 704-7700

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 3

I.      Harris Files The Underlying Lawsuit. ............................................................ 3

II.     The Durham Defendants' Request For A Defense And Indemnity Is Denied
        Pursuant To The Ohio Security Policy's Bacteria Exclusion. ........................... 4

III.    Harris And The Durham Defendants Seek To Enforce The Judgment Against
        The Insurer-Defendants. ................................................................................ 6

LEGAL STANDARD .................................................................................................. 7

ARGUMENT ............................................................................................................. 9

I.      Ohio Security Had No Duty To Defend The Durham Defendants. ..................... 9

        A.      From the Outset, the Bacteria Exclusion Plainly Applied to Harris's
                Claims. ............................................................................................ 9

        B.      Harris and the Durham Defendants Have Waived Any Argument That an
                Exception in the Bacteria Exclusion Somehow Applies. ....................... 11

        C.      Even If Considered, the Consumption Exception Does Not Create a Duty
                to Defend. ......................................................................................... 14

II.     Liberty Mutual Had No Duty To Defend The Durham Defendants. .................. 16

III.    Ohio Casualty Did Not Have A Duty To Defend The Durham Defendants. ....... 17

CONCLUSION ......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

**Cases**

*Am. Nat. Fire Ins. v. Berrones*,
   No. IP99-1286-C-T/G, 2000 WL 1617746 (S.D. Ind. Oct. 13, 2000).....................................17

*AMCO Ins. Co. v. Swagat Grp., LLC*,
   2009 WL 4015766 (C.D. Ill. Oct. 28, 2009)...........................................................................15

*AMCO Ins. Co. v. Swagat Grp., LLC*,
   No. 07-3330, 2009 WL 331539 (C.D. Ill. Feb. 10, 2009) ...........................................10, 11, 15

*Anderson v. Donahoe*,
   699 F.3d 989 (7th Cir. 2012) .................................................................................................14

*Argyropoulos v. City of Alton*,
   539 F.3d 724 (7th Cir. 2008) ...................................................................................................7

*Bruegge v. Metro. Prop. & Cas. Ins. Co.*,
   No. 13-CV-1256-JPG-DGW, 2014 WL 2535947 (S.D. Ill. June 5, 2014)............................17

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................................................7, 13

*Esicorp, Inc. v. Liberty Mut. Ins. Co.*,
   193 F.3d 966 (8th Cir. 1999) ........................................................................................9, 10, 14

*Harris v. Durham Enters, Inc.*,
   No. 20-CV-72-JPG, 2020 WL 6270897 (S.D. Ill. Oct. 26, 2020) ...........................................6

*Heinecke v. Aurora Healthcare, Inc.*,
   2013 WI App 133...................................................................................................................15

*Hurst-Rosche Eng'rs, Inc. v. Com. Union Ins. Co.*,
   51 F.3d 1336 (7th Cir. 1995) .................................................................................................16

*Interstate Bakeries Corp. v. OneBeacon Ins. Co.*,
   686 F.3d 539 (8th Cir. 2012) .......................................................................................8, 14, 15

*Luken v. Indiana Ins. Co.*,
   No. 13-CV-0991-MJR-PMF, 2014 WL 2157388 (S.D. Ill. May 22, 2014) .......................2, 17

*NGM Ins. Co. v. Low Country Finish Carpentry, Inc.*,
   No. CV 2:11-1016, 2012 WL 13005316 (D.S.C. Oct. 31, 2012) ...........................................15

*Penn-Star Ins. Co. v. Zeller Properties, Inc.*,
  2019 WL 2264169 (S.D. Ill. May 24, 2019)....................................................................15

*Penn-Star Ins. Co. v. Zeller Properties, Inc.*,
  No. 3:17-CV-1264-NJR, 2020 WL 1442666 (S.D. Ill. Mar. 24, 2020)...........................11, 14

*Piatt v. In. Lumbermen's Mut. Ins. Co.*,
  461 S.W.3d 788 (Mo. 2015) (en banc) ..............................................................................14

*Progressive Cty. Mut. Ins. Co. v. Fetty*,
  No. 3:19-CV-316-ECM, 2020 WL 265681 (M.D. Ala. Jan. 17, 2020)................................12

*Purscell v. TICO Ins. Co.*,
  959 F. Supp. 2d 1195 (W.D. Mo. 2013), *aff'd*, 790 F.3d 842 (8th Cir. 2015)...................8, 16

*Selective Ins. Co. of S.C. v. Target Corp.*,
  845 F.3d 263 (7th Cir. 2016), *as amended* (Jan. 25, 2017) ...............................................8, 16

*Trainwreck W. Inc. v. Burlington Ins. Co.*,
  235 S.W.3d 33 (Mo. Ct. App. 2007)...........................................................................3, 8, 9, 16

*Trans World Airlines, Inc. v. Associated Aviation Underwriters*,
  58 S.W.3d 609 (Mo. Ct. App. 2001).................................................................................13

*United States v. Conservation Chem. Co.*,
  653 F. Supp. 152 (W.D. Mo. 1986) ..................................................................................8, 16

*United States v. Ledbetter*,
  No. 4:15-CV-136-RN, 2016 WL 4148304 (E.D.N.C. Aug. 4, 2016).................................12

*United States v. Schuerman*,
  No. 13-CV-560-WDS-DGW, 2013 WL 5609344 (S.D. Ill. Oct. 11, 2013) ........................12

*Williams v. Employers Mut. Cas. Co.*,
  No. 4:13-CV-2393 RLW, 2015 WL 892556 (E.D. Mo. Mar. 2, 2015),
  *aff'd*, 845 F.3d 891 (8th Cir. 2017)....................................................................................2

*WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*,
  231 F. Supp. 3d 313 (W.D. Mo. 2017),
  *aff'd on other grounds*, 897 F.3d 987 (8th Cir. 2018) ..........................................................14

**Statutes**

735 Ill. Comp. Stat. Ann. 5/2-622(a) ..............................................................................10

735 Ill. Comp. Stat. Ann. 5/2-622(g) ..............................................................................10

**Page**

**Rules**

FEDERAL RULE OF CIVIL PROCEDURE 56(a) ......................................................................7

## **INTRODUCTION**

The instant insurance coverage dispute arises out of a lawsuit filed against (inter alia) Defendants Durham Enterprises, Inc. ("Durham Enterprises") and Don Durham (collectively, "the Durham Defendants") regarding alleged personal injury sustained by Plaintiff Tommy Harris ("Harris"). This case can now be resolved based on one undisputed fact: in the underlying personal injury case, Harris alleged in his First Amended Complaint ("FAC") that he contracted bacterial infections as a result of the Durham Defendants' failure to clean and sanitize a dialysis facility properly.

At the time Harris allegedly contracted such bacterial infections, Durham Enterprises maintained a commercial package insurance policy, No. BKS (16) 57 07 84 32, issued by Defendant Ohio Security Insurance Company ("Ohio Security"). The policy itself (the "Ohio Security Policy") contained a "Fungi or Bacteria Exclusion" ("the Bacteria Exclusion") eliminating any coverage for claims of bodily injury "which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any . . . bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage." The issue raised by this motion concerns the application of the Bacteria Exclusion to Harris's claim against the Durham Defendants in the underlying action.

On that issue, the Court need look no further than the Certificate of Merit from a licensed medical doctor that Harris attached to his FAC. The Certificate of Merit stated that Harris was "at [a] significantly increased risk of *bacterial* sepsis," and that he was ultimately "diagnosed with both gram positive and gram negative sepsis," which are both forms of *bacterial* sepsis. As a result, when the Durham Defendants tendered Harris's FAC to Ohio Security for defense and

indemnity under the Ohio Security Policy, a defense was appropriately denied pursuant to the Ohio Security Policy's Bacteria Exclusion.

It is black-letter law that an insurer may deny a defense where a policy exclusion unambiguously applies.  *See Williams v. Emp'rs Mut. Cas. Co.*, No. 4:13-CV-2393 RLW, 2015 WL 892556, at *4 (E.D. Mo. Mar. 2, 2015), *aff'd*, 845 F.3d 891 (8th Cir. 2017).  Ohio Security's denial of a defense was therefore warranted.

For the same reasons, the Court should similarly grant summary judgment in favor of Defendant The Ohio Casualty Insurance Company ("Ohio Casualty"), which issued to Durham Enterprises a commercial umbrella policy, No. USO (16) 57 07 84 32 ("the Ohio Casualty Policy"), which included an exclusion materially identical to the Bacteria Exclusion in the Ohio Security Policy.  In other words, because the Bacteria Exclusions in both policies are materially identical, the Court should find that Ohio Casualty (like Ohio Security) had no duty to defend the Durham Defendants in light of the plain language of the Bacteria Exclusion and its straightforward application to the allegations of the FAC.

Summary judgment should also be granted in favor of Defendant Liberty Mutual Insurance Company ("Liberty Mutual"), though for a different reason.  Specifically, it is undisputed that Liberty Mutual did not issue any insurance policy to either of the Durham Defendants.  The Durham Defendants are therefore not an insured under any Liberty Mutual insurance policy from which the duty to defend could have arisen.  *See Luken v. Ind. Ins. Co.*, No. 13-CV-0991-MJR-PMF, 2014 WL 2157388, at *6 (S.D. Ill. May 22, 2014) (granting summary judgment in favor of three insurers that "did not issue any liability policy to the [insured]").

Summary judgment should accordingly be granted in favor of the Insurer-Defendants because none of them owed a duty to defend.  And because the duty to defend is "broader than the

duty to indemnify," *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 44 (Mo. Ct. App. 2007), that should be the end of this matter.

## **FACTUAL BACKGROUND**

### I.     **Harris Files The Underlying Lawsuit.**

On January 10, 2017, Harris filed a complaint in the Circuit Court of St. Clair County against three defendants who are not parties to this case.  SUF[1] ¶ 1.  On April 19, 2017, Harris filed a First Amended Complaint ("FAC"), naming as a defendant "City Wide Maintenance of St. Louis[.]"  *Id.* ¶ 2.  City Wide Maintenance of St. Louis was the d/b/a name of Durham Enterprises at the time the FAC was filed.  *Id.*

The FAC alleged that Harris suffered "numerous infections" resulting from the defendants' conduct.  *Id.* ¶ 3.  As to Durham Enterprises, the FAC alleged the following: (1) that Durham Enterprises "was providing commercial cleaning services to the dialysis center located at 5105 W Main St., Belleville, IL 62226-4728"; and (2) that Durham Enterprises "negligently and carelessly failed to properly clean and sanitize said dialysis center."  *Id.* ¶ 4.

Attached to, and filed concurrently with, the FAC was an affidavit of Harris's counsel— the same lawyer who represents him in this case—attaching a Certificate of Merit.  *Id.* ¶ 5.  The affidavit stated, among other things, that such counsel had sent Harris's medical records to a "healthcare specialist," and that the "healthcare specialist ha[d] reviewed said records and ha[d] determined that there [was] a reasonable and meritorious cause for the filing of this action."  *Id.* ¶ 6.

The Certificate of Merit—which was provided by the healthcare specialist, "a medical doctor with an active medical license," and which was also attached to, and filed concurrently

---

[1]     "SUF" means the Insurer-Defendants' Statement of Undisputed Material Facts, filed herewith.

with, the FAC—stated that Harris was "at [a] significantly increased risk of *bacterial* sepsis" and that Harris was ultimately "diagnosed with both gram positive and gram negative sepsis." *Id.* ¶¶ 7–8 (emphasis added).  Harris's infections were therefore alleged to be bacterial from the outset of the case.  *Id.*

## II.    The Durham Defendants' Request For A Defense And Indemnity Is Denied Pursuant To The Ohio Security Policy's Bacteria Exclusion.

On May 5, 2017, the Durham Defendants requested that Ohio Security provide them with a defense against Harris's claims.  *Id.* ¶ 9.  The Durham Defendants' tender was accompanied by the FAC, including the affidavit from Harris's counsel, and the Certificate of Merit.  *Id.* ¶ 10. Based on these documents, Emily Anderson ("Anderson"), a claims handler for Ohio Security, recommended to her manager, Joshua Hilgemann ("Hilgemann"), that coverage for the claim be denied pursuant to the Ohio Security Policy's Bacteria Exclusion.  *Id.* ¶¶ 11–12.  It provides:

This insurance does not apply to:

**Fungi or Bacteria**

a.    "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b.    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

*Id.* ¶ 15.

4

As Hilgemann, who made the ultimate decision to deny such coverage, stated, the evaluation of the Durham Defendants' request was fairly straightforward given the nature of Harris's infections, as described in the Certificate of Merit. *Id.* ¶¶ 16–17. Hilgemann further stated that his ultimate conclusion was not altered by the exception to the Bacteria Exclusion, which exempts therefrom injury resulting from "bacteria that are, are on, or are contained in, a good or product intended for bodily consumption." *Id.* ¶¶ 18–19. For this determination, Hilgemann relied on the unambiguous allegation that Durham Enterprises failed to clean the dialysis facility adequately, and concluded that a dialysis facility would not reasonably be interpreted to qualify as a "good or product intended for bodily consumption." *Id.* ¶ 19.

Ohio Security therefore sent the Durham Defendants a coverage declination letter on May 15, 2017, roughly ten days after their tender, and roughly one month after the FAC was filed. *Id.* ¶¶ 20–22. The letter explained that Ohio Security's declination was based on the Bacteria Exclusion, and also invited the Durham Defendants to send "any additional information you would like us to consider concerning [Harris's] Lawsuit." *Id.* ¶¶ 20–23. Notwithstanding this invitation, the Durham Defendants never contacted Ohio Security after May 15, 2017. *Id.* ¶ 24.

Instead, on July 18, 2019, Harris and the Durham Defendants entered into a "Covenant Not To Execute And Limit Recovery" (the "Covenant"). *Id.* ¶ 25. As the Court previously explained, pursuant to the Covenant, "the Durham defendants have taken a dive in order to pave the way for Harris to collect from one or more of their insurers. . . . In exchange, the Durham defendants essentially received from Harris immunity from collection." Dkt. No. 36 at 10; *see also* Dkt. No. 63 at 3. Shortly after entering into the Covenant, Harris and the Durham Defendants participated in a short, uncontested, bench trial in the St. Clair County court. *See* Dkt. No. 36 at 2; Dkt. No. 63 at 3. Following that "trial," Harris's counsel emailed the trial court proposed findings of fact and conclusions of law ("the Proposed Judgment"). *Id.* ¶ 27. The Durham

Defendants did not contest the Proposed Judgment, or file their own competing version.  *Id.* ¶ 28. As a result, the trial court adopted the Proposed Judgment verbatim, and entered judgment against the Durham Defendants in the amount of $2,080,585.95.  *Id.* ¶ 29.

### III.  Harris And The Durham Defendants Seek To Enforce The Judgment Against The Insurer-Defendants.

On December 2, 2019, after the trial court's judgment became final, Harris filed a "First Amended Complaint" in the same case to add claims for declaratory judgment against incorrectly-named entities "Liberty Mutual Insurance" and "Ohio Security," seeking a judgment declaring that they had breached their alleged duty to defend the Durham Defendants, and that they were required to indemnify the Durham Defendants for the trial court's judgment.  *See* Dkt. No. 40-1 at Ex. A. Ohio Security subsequently removed the case to this Court (*see* Dkt. No. 40-1), and filed a counterclaim (against Harris) and cross-claim (against the Durham Defendants) for declaratory judgment.  *See* Dkt. No. 8 (Ohio Security's original pleading); *see also* Dkt. No. 56 (Ohio Security's operative pleading).  The Durham Defendants then filed cross-claims against Ohio Security and Liberty Mutual for bad faith, breach of fiduciary duty, and for punitive damages. Dkt. Nos. 37–38.  Thus, and as also shown by the Covenant, the Durham Defendants' interests are aligned with Harris's interests.  Indeed, the Court previously ruled that Harris and the Durham Defendants are properly realigned together as plaintiffs in this case.  *See* Dkt. No. 36 at 10.

This Court dismissed the Durham Defendants' fiduciary duty and punitive damage cross-claims, and also dismissed the bad faith claim insofar as it was premised on the Insurer-Defendants' alleged bad faith breach of the duty to defend.  *See Harris v. Durham Enters, Inc.*, No. 20-CV-72-JPG, 2020 WL 6270897, at *2–6 (S.D. Ill. Oct. 26, 2020).  The Court also rejected the Durham Defendants' argument that Ohio Security was "collaterally estopped by the state court judgment entered earlier in this case from contesting its duty to defend."  *Id.* at *2; *see also id.* at *3 ("Collateral estoppel simply does not apply to the Circuit Court's decision that [Ohio Security]

6

owed a duty to defend the Durham defendants under the insurance policy."). With leave of Court, the Durham Defendants refiled their cross-claims, and now assert claims for breach of contract and bad faith failure to settle. *See* Dkt. No. 69. To date, however, the Durham Defendants have failed to file an answer to Ohio Security's operative cross-claims. *See generally* Dkt. (showing that Ohio Security's operative cross-claims were filed August 12, 2020 (Dkt. No. 56), and that the Durham Defendants failed to file an answer thereto).

With this Court's permission, Ohio Security affiliate Ohio Casualty then intervened given that: (1) it had issued to Durham Enterprises the Ohio Casualty Policy, a commercial umbrella policy with the same policy period as the Ohio Security Policy, and which could arguably be implicated due to the size of the uncontested judgment; (2) the Ohio Casualty Policy includes a "Fungi or Bacteria Exclusion" that is identical (in all material respects) to the Bacteria Exclusion in the Ohio Security Policy; and (3) the Durham Defendants never gave Ohio Casualty notice of Harris's claims under the terms of the Ohio Casualty Policy. *See generally* Dkt. Nos. 53–54, 64, 66; *see also* SUF ¶ 38.

At a hearing on March 23, 2021, the Court ordered the parties to brief the duty to defend issue before addressing any indemnity issues. *See generally* Dkt. Nos. 89, 91. This motion is being filed in accordance with that order.

## **LEGAL STANDARD**

Summary judgment should be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Mere metaphysical doubt as to the material facts is not enough." *Id.* Nor are inferences "supported by only speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (citation omitted). Moreover, whether an insurer owes a duty to defend under an insurance policy is a question of contract

interpretation, and thus a question of law that can be decided on a motion for summary judgment. *See Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 543 (8th Cir. 2012) (affirming district court's ruling that insurer had no duty to defend as a matter of law).

By this motion, the Insurer-Defendants move for summary judgment on all claims. Specifically, the Insurer-Defendants seek a declaration that neither Ohio Security nor Liberty Mutual nor Ohio Casualty had any duty to defend the Durham Defendants. Because the duty to defend is broader than the duty to indemnify, if the Court rules that the Insurer-Defendants had no to defend, they likewise would have no duty to indemnify or no duty to settle, and should result in judgment in their favor on all claims. *See Trainwreck W. Inc.*, 235 S.W.3d at 44 (observing that where there is no duty to defend, there can be no duty to indemnify); *United States v. Conservation Chem. Co.*, 653 F. Supp. 152, 185 (W.D. Mo. 1986) (noting that Missouri law "clearly and unequivocally requires the assumption by the insurer of control over negotiation, settlement and legal proceedings brought against the insured as a condition precedent to the maintenance of an action for the tort of bad faith refusal to settle"); *Purscell v. TICO Ins. Co.*, 959 F. Supp. 2d 1195, 1200 (W.D. Mo. 2013), *aff'd*, 790 F.3d 842 (8th Cir. 2015) (noting that bad faith failure to settle claims require proof that "the liability insurer has assumed control over negotiation, settlement, and legal proceedings brought against the insured"); *Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 271 (7th Cir. 2016), *as amended* (Jan. 25, 2017) (applying Illinois law) ("Conversely, if it can be established that the claims were not even potentially covered (burden on the insurer), then the insurer is not required to reimburse the settlement.").[2]

---

[2]     To be clear, and pursuant to the Court's March 23 order, the Insurer-Defendants are not in this motion briefing the law and the facts relating to issues of indemnity. The Insurer-Defendants mention the duty to indemnify issue only to note that, if the Court rules that the Insurer-Defendants had no duty to defend, then there is no need to address the issue of indemnity because there can be no indemnity obligation where there is no defense obligation.

## ARGUMENT

I.   **Ohio Security Had No Duty To Defend The Durham Defendants.**

A.   **From the Outset, the Bacteria Exclusion Plainly Applied to Harris's Claims.**

Whether an insurer owes a duty to defend is "determined by comparing the policy language with the allegations in the complaint." *Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 969 (8th Cir. 1999) (applying Missouri law). An insurer must also consider "actual facts," defined as "facts which were known, or should have been reasonably apparent at the commencement of the suit." *Esicorp, Inc.*, 193 F.3d at 969 (citing *Marshall's U.S. Auto Supply v. Md. Cas. Co.*, 189 S.W.2d 529, 531 (Mo. 1945)). Whether a duty to defend is owed is therefore "determined from the cause of action pleaded, at the time the action is commenced, not from what an investigation . . . of the case may show." *Trainwreck W. Inc.*, 235 S.W.3d at 39 (citing *Inter-State Oil Co. v. Equity Mut. Ins. Co.*, 183 S.W.2d 328, 332 (Mo. App. Ct. 1944)).

The relevant language from the Ohio Security Policy is set forth in the Bacteria Exclusion, which unambiguously excludes from coverage claims of bodily injury:

> which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any . . . bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

SUF ¶ 15.

The question is therefore whether the FAC and the "actual facts" known at the time of the insurer's review demonstrated that Harris's infections were bacterial. On that issue, Harris's FAC and the Certificate of Merit attached thereto—which were the only documents from the underlying case that were provided to Ohio Security by the Durham Defendants—were clear on their face. The FAC alleged that Harris suffered infections because the Durham Defendants "negligently and carelessly failed to properly clean and sanitize [the] dialysis center" where Harris was receiving

9

dialysis treatment.  *Id.* ¶ 4.  A dialysis center plainly fits within the Bacteria Exclusion's clause requiring the bacteria to be "on or within a building or structure."  *See, e.g.*, *AMCO Ins. Co. v. Swagat Grp., LLC*, No. 07-3330, 2009 WL 331539, at *4 (C.D. Ill. Feb. 10, 2009) (holding that identical bacteria exclusion barred coverage where the underlying plaintiff alleged "that guests of the Hotel suffered injuries after coming in contact with bacteria on the Hotel premises").

The Certificate of Merit—which was filed simultaneously with, and attached to, the FAC that was provided to Ohio Security—stated that Plaintiff was "at [a] significantly increased risk of *bacterial* sepsis" and that Plaintiff was ultimately "diagnosed with both gram positive and gram negative sepsis," which are forms of bacterial sepsis.  SUF ¶ 8 (emphasis added).  Thus, and as the Court previously found *while taking all facts alleged by the Durham Defendants as true*, "the certificate of merit attached to the First Amended Complaint indicates that Harris suffered from bacterial sepsis."  Dkt. No. 63 at 3.

In cases where a certificate of merit is needed (as plaintiff's counsel concluded it was here), Illinois requires that it be filed with the complaint.  *See* 735 Ill. Comp. Stat. Ann. 5/2-622(a) (requiring a Certificate of Merit to be "attached to the original and all copies of the complaint").  Failure to do so "shall be grounds for dismissal."  735 Ill. Comp. Stat. Ann. 5/2-622(g).  Simply put, the Certificate of Merit was part of the FAC, and in any event would be part of the "actual facts" an insurer may consider during the duty-to-defend review.  *Esicorp, Inc.*, 193 F.3d at 969.  Thus, it was plainly proper for Ohio Security to review and rely upon the Certificate of Merit when determining the duty to defend.

Anderson, the claims adjuster evaluating the claim, relied on both the FAC and the Certificate of Merit as part of her investigation.  SUF ¶¶ 11–12.  So did Hilgemann, who was the person ultimately responsible for deciding whether to deny coverage.  *Id.* ¶¶ 16–17.  Neither relied on any other document or information beyond the pleadings, the policy, and other minimal

information conveyed to them by Durham. *Id.* ¶¶ 11–12, 16–17. Accordingly, the letter sent by Ohio Security to the Durham Defendants correctly based the coverage declination on the Bacteria Exclusion, a conclusion that is well supported by case law interpreting the exclusion. *See, e.g.*, *Penn-Star Ins. Co. v. Zeller Properties, Inc.*, No. 3:17-CV-1264-NJR, 2020 WL 1442666, at *2 (S.D. Ill. Mar. 24, 2020) (holding that identical bacteria exclusion barred coverage where the underlying plaintiff alleged injuries resulting from exposure to "toxic mold" that "buil[t] up on HVAC vents" and "gr[ew] on desks and office furniture"); *AMCO Ins. Co.*, 2009 WL 331539, at *4 (holding that identical bacteria exclusion barred coverage where the underlying plaintiff alleged "that guests of the Hotel suffered injuries after coming in contact with bacteria on the Hotel premises").

The fact that Harris's alleged injury was bacterial is also supported by his lawyer's own tactical decisions in the litigation. For example, in the underlying case, Harris's counsel retained an expert and obtained "friendly" deposition testimony in which the expert repeatedly explained that Harris suffered from bacterial sepsis. SUF ¶ 40. Amazingly, when the time came to produce that transcript in this case, Harris's lawyer produced a transcript that attempted to redact all references to a bacterial infection. *Id.* ¶ 41. Only when the Insurer-Defendants' counsel pointed this out did Harris's counsel attach the full transcript. Clearly, his lawyer knows full well that any injury was bacterial.

Simply put, the facts, the law, the parties' and their lawyers' own conduct, and common sense all show that Ohio Security's decision to deny a defense was correct. That should be the end of this matter.

## B. Harris and the Durham Defendants Have Waived Any Argument That an Exception in the Bacteria Exclusion Somehow Applies.

As noted above, an exception therein provides that the Bacteria Exclusion does not apply to injuries resulting from "bacteria that are, are on, or are contained in, a good or product intended

for bodily consumption."  Even if such exception were relevant on the facts here (it's not, *see infra* Argument Section I.C.), Harris and the Durham Defendants have each waived any argument that it applies.

As an initial matter, the Durham Defendants failed to answer Ohio Security's cross-claims for declaratory judgment.  *See generally* Dkt. (showing that Ohio Security's operative cross-claims were filed August 12, 2020 (Dkt. No. 56), and that the Durham Defendants failed to file an answer thereto).  The Court can therefore deem Ohio Security's allegations admitted and enter judgment in favor of Ohio Security on that basis alone.  *See, e.g.*, *United States v. Schuerman*, No. 13-CV-560-WDS-DGW, 2013 WL 5609344, at *2 (S.D. Ill. Oct. 11, 2013) (entering default judgment against a defendant, reasoning that, "[i]n light of Schuerman's failure to respond, the allegations against him are deemed true"); *Progressive Cty. Mut. Ins. Co. v. Fetty*, No. 3:19-CV-316-ECM, 2020 WL 265681, at *3 (M.D. Ala. Jan. 17, 2020) (same, noting that, "by failing to respond," the insured in a declaratory judgment action "admit[ted] as true" the allegations in the insurer's complaint); *United States v. Ledbetter*, No. 4:15-CV-136-RN, 2016 WL 4148304, at *2 (E.D.N.C. Aug. 4, 2016) (same, reasoning that the defendant "conceded the truth of [plaintiff's] allegations by failing to respond to the Complaint").

In any event, neither Harris nor the Durham Defendants articulated in any of their pleadings that they intend to rely on an exception in the Bacteria Exclusion.  *See* Dkt. Nos. 34, 61 (Harris's original (Dkt. No. 34) and operative (Dkt. No. 61) answers to Ohio Security's cross-claims); 38 (Durham Defendants' original answer—which is no longer operative—to Ohio Security's original cross-claims); 49 (Harris's amended, operative complaint); 37 (Durham Defendants' original cross-claims against Ohio Security and Liberty Mutual); 69 (Durham Defendants' amended, operative cross-claims against Ohio Security and Liberty Mutual).

Indeed, to make sure that no party was relying on any such exception, the Insurer-Defendants served interrogatories on both Harris and the Durham Defendants asking for the bases of their claims that the Bacteria Exclusion did not apply.  SUF ¶ 46.  Harris responded as follows:

> It is plaintiff's contention that the insurance companies . . . are estopped from raising policy defenses, such as the aforementioned exclusions, because they breached their duty to defend by failing to defend under a reservation of rights or file a timely declaratory judgment.  Further, based on the evidence adduced at the trial in the underlying matter, the exclusion would not apply as there isn't evidence that this was a bacterial or fungal infection.

*Id.* ¶ 47.

The Durham Defendants' response was similar:

> Objection in that this contention interrogatory is premature in that discovery has not been concluded.  Subject to that objection and reserving the right to supplement this interrogatory after the conclusion of discovery, the Durham Defendants do indeed contend that the "Fungi or Bacteria Exclusion" does not apply.  Again, subject to the objection, the Durham Defendants direct Ohio Security to the Judgment of the Trial Court, the language of the exclusion and the testimony of Emily Anderson who testified that she spent possibly two to four hours "investigating" the Harris claim before recommending the denial of the claim and denial of providing a defense without the benefit of any medical background nor medical expert assistance as well as no legal background as to Missouri law.

*Id.* ¶ 48.

The fact that neither Harris nor the Durham Defendants have pled this theory is critical, because a party seeking coverage under an exception to a policy exclusion "bears the burden to make a prima facie case that . . . the exception to the . . . exclusion applies."  *Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 58 S.W.3d 609, 622 (Mo. Ct. App. 2001); *see also Celotex Corp.*, 477 U.S. at 322 (holding that a court should enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, *and on which that party will bear the burden of proof*") (emphasis added).  Thus, by not pleading this theory or identifying it in response to what both Harris and the Durham Defendants recognized was a "contention" interrogatory, (SUF ¶¶ 47–48), Harris and the Durham

13

Defendants have waived their right to rely on such exception. *See, e.g.*, *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (noting that a plaintiff may not amend its complaint by introducing new legal theories during summary judgment briefing that were not included in the complaint); *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 231 F. Supp. 3d 313, 318 (W.D. Mo. 2017), *aff'd on other grounds*, 897 F.3d 987 (8th Cir. 2018) (holding that an insured could not raise new claims for the first time on a motion for summary judgment).

### C.   Even If Considered, the Consumption Exception Does Not Create a Duty to Defend.

Even if the Court were to look past Harris and the Durham Defendants' waiver, the result would not change:  By its terms, the exception plainly does not apply.  Again, the duty to defend analysis focuses on the complaint's allegations "against the insured."  *Piatt v. In. Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. 2015) (en banc); *see also Esicorp, Inc.*, 193 F.3d at 969 (observing that the focus is on the "complaint against the insured").  Moreover, "[i]n determining whether there is a duty to defend, a court is barred from 'reading into a complaint any factual assumptions.'"  *Interstate Bakeries Corp.*, 686 F.3d at 542–43 (quoting *Penn–Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 599 (Mo. Ct. App. 2010)).

The FAC alleged that Harris suffered a series of infections because the Durham Defendants "failed to properly clean and sanitize [the] dialysis center" where Harris was receiving dialysis treatment.  SUF ¶¶ 4, 19.  Based on those allegations, Ohio Security correctly concluded that a dialysis facility would not qualify as a "good or product intended for bodily consumption."  *Id.* Any other conclusion would be irrational and contrary to any reasonable inference that could be drawn from the FAC.[3]  *See, e.g.*, *Penn-Star Ins. Co.*, 2020 WL 1442666, at *2 (holding that

---

[3]      Furthermore, it is undisputed that the Durham Defendants never provided any additional information to Ohio Security besides the FAC—even though Ohio Security expressly invited them to.  *See* SUF ¶¶ 23–24.  Accordingly, all that is at issue is what "should have been reasonably apparent" to Ohio Security from the materials that were actually submitted—the FAC.  *Esicorp, Inc.*, 193 F.3d at 969 & n.1.

identical bacteria exclusion, with an identical consumption exception, barred coverage where the underlying plaintiff alleged injuries resulting from exposure to "toxic mold" that "buil[t] up on HVAC vents" and "gr[ew] on desks and office furniture")[4]; *AMCO Ins. Co.*, 2009 WL 331539, at *4 (holding that identical bacteria exclusion, with an identical exception, barred coverage where the underlying plaintiff alleged "that guests of the Hotel suffered injuries after coming in contact with bacteria on the Hotel premises");[5] *NGM Ins. Co. v. Low Country Finish Carpentry, Inc.*, No. CV 2:11-1016, 2012 WL 13005316, at *4 (D.S.C. Oct. 31, 2012) (holding that identical bacteria exclusion, with an identical exception, precluded coverage for damage resulting from "high levels of mold or mildew [that] developed throughout the home including within the window sills, interior and exterior trim, interior wall cavities and baseboards, fascia, finished and subflooring, floor joints, ceilings, and around exterior windows," noting that "[i]n a case where a plaintiff alleges injuries stemming from bacteria or mold in a wall having seeped into the ambient air—the very type of claim intended to be excluded in the first place—there is no doubt that the insurer will not be liable, and the exception will not apply") (citation and internal quotation marks omitted); *Heinecke v. Aurora Healthcare, Inc.*, 2013 WI App 133, ¶¶ 12–19 (holding that identical bacteria exclusion, with an identical exception, precluded coverage for claims that plaintiffs contracted Legionnaire's disease after they were exposed to bacteria present in the water of a decorative water fountain located in a hospital lobby).

Simply put, any interpretation that a "dialysis facility" could be a "good or product intended for bodily consumption" would "require an unacceptable degree of imagination." *Interstate*

---

[4]  Although it was not cited in the court's opinion, the policy at issue in *Penn-Star Insurance Company* contained an exception identical to the one in the Ohio Security Policy. *See Penn-Star Ins. Co. v. Zeller Properties, Inc.*, 2019 WL 2264169 (S.D. Ill. May 24, 2019).

[5]  Although it was not cited in the court's opinion, the policy at issue in *AMCO Insurance Co.* contained an exception identical to the one in the Ohio Security Policy. *See AMCO Ins. Co. v. Swagat Grp., LLC*, 2009 WL 4015766 (C.D. Ill. Oct. 28, 2009).

*Bakeries Corp.*, 686 F.3d at 545; *see also*, *e.g.*, *Hurst-Rosche Eng'rs, Inc. v. Com. Union Ins. Co.*, 51 F.3d 1336, 1344 (7th Cir. 1995) (noting that the question of whether there is a "possibility" of coverage "must be governed by reason," and that insurers are not required to "accept an insured's unreasonable and far-fetched interpretation of a plaintiff's allegations of wrongdoing").

*    *    *

Accordingly, The Bacteria Exclusion applied "at the outset of the case," and Ohio Security did not have the Durham Defendants a duty to defend.  That should be the end of this case, since an insurer that does not have a duty to defend, cannot have a duty to indemnify or a duty to settle. *See Trainwreck W. Inc.*, 235 S.W.3d at 44 (observing that where there is no duty to defend, there can be no duty to indemnify); *Conservation Chem. Co.*, 653 F. Supp. at 185 (noting that Missouri law "clearly and unequivocally requires the assumption by the insurer of control over negotiation, settlement and legal proceedings brought against the insured as a condition precedent to the maintenance of an action for the tort of bad faith refusal to settle"); *Purscell*, 959 F. Supp. 2d at 1200 (noting that bad faith failure to settle claims require proof that "the liability insurer has assumed control over negotiation, settlement, and legal proceedings brought against the insured"); *Selective Ins. Co. of S.C.*, 845 F.3d at 271 (applying Illinois law) ("Conversely, if it can be established that the claims were not even potentially covered (burden on the insurer), then the insurer is not required to reimburse the settlement.").

## II.     Liberty Mutual Had No Duty To Defend The Durham Defendants.

For the reasons above, there is no duty to defend under the plain language of the Ohio Security insurance policy at issue in this case.  In addition, there is absolutely no evidence that Liberty Mutual issued the Ohio Security Policy.   SUF ¶ 49.   In other words, the Durham Defendants are not an insured under any insurance policy issued by Liberty Mutual from which the duty to defend could have arisen.

In *Luken v. Indiana Insurance Co.*, then-Judge Reagan granted summary judgment on an insured's declaratory judgment claims against three insurers that "did not issue any liability policy to the [insured]." 2014 WL 2157388, at *6. The Court reasoned that "[i]f an Insurer did not even issue a policy to the [insured] for the period in question, there is no coverage possible for the Underlying Suit, and that Defendant is entitled to judgment as a matter of law." *Id.*; *see also Bruegge v. Metro. Prop. & Cas. Ins. Co.*, No. 13-CV-1256-JPG-DGW, 2014 WL 2535947, at *2 (S.D. Ill. June 5, 2014) (Gilbert, J.) (dismissing claims for "breach of insurance contract and bad faith failure to pay a claim" against insurer that did not issue the relevant policy, reasoning that "[t]here is no basis . . . for holding [the insurer] liable for a contract to which it was not a party"); *Am. Nat. Fire Ins. v. Berrones*, No. IP99-1286-C-T/G, 2000 WL 1617746, at *3–4 (S.D. Ind. Oct. 13, 2000) (granting summary judgment on claims against insurer's "claims handling entity" where that entity "did not issue the Policy and [was] not a party to the insurance contract"). Liberty Mutual is accordingly entitled to summary judgment.

## III.   Ohio Casualty Did Not Have A Duty To Defend The Durham Defendants.

The Ohio Casualty Policy's Bacteria Exclusion is materially identical to the one in the Ohio Security Policy. SUF ¶¶ 38, 42–45. As a result, the Court should grant summary judgment on Ohio Casualty's counterclaims for the same reasons articulated in Argument Section I, above.

## **CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment in the Insurer-Defendants' favor on all claims.

Dated: July 2, 2021

Respectfully Submitted,

**OHIO SECURITY INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY and THE OHIO CASUALTY INSURANCE COMPANY**

By:     /s/   Matthew O. Sitzer
_____
One of Its Attorneys

Matthew O. Sitzer (#6210083)
Matthew C. Wolfe (#6307345)
Peter F. O'Neill (#6324429)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive, Suite 4700
Chicago, Illinois 60606
Telephone:  (312) 704-7700
Facsimile:  (312) 558-1195
msitzer@shb.com
mwolfe@shb.com
pfoneill@shb.com

## **CERTIFICATE OF SERVICE**

I, Matthew O. Sitzer, an attorney, hereby certify that, on **July 2, 2021**, I caused a true and complete copy of the foregoing **INSURER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF** to be filed electronically. Notice of this filing will be sent to all parties below registered on this Court's CM/ECF system. Parties may access this filing through the Court's system.

> Samantha Unsell
> **KEEFE, KEEFE & UNSELL, P.C.**
> #6 Executive Woods Court
> Belleville, Illinois 62226
> Telephone:  (618) 236-2221
> Facsimile:  (618) 236-2194
> Email: ashley@tqkeefe.com
>           samunsell@gmail.com
>
> *Counsel for Tommy Harris*
>
> Ted F. Frapolli
> **LAW OFFICES OF TED F. FRAPOLLI**
> 1714 Deer Tracks Trail, Suite 200
> St. Louis, Missouri 63131
> Telephone:  (314) 993-4261
> Facsimile:  (314) 993-3367
> Email: ted@tffrapollilaw.com
>
> *Counsel for Durham Enterprises, Inc. and
> Don Durham*

                                      /s/  Matthew O. Sitzer