# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS
# EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| TOMMY HARRIS, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DURHAM ENTERPRISES, INC. and DON DURHAM, | ) | No.  3:20-CV-00072-JPG |
| | ) | |
| Defendants/Crossclaim Plaintiffs/ Crossclaim Defendants, | ) | Honorable J. Phil Gilbert |
| | ) | |
| and | ) | CJRA Track:  B |
| | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant/Crossclaim Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OHIO SECURITY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff/ Crossclaim Plaintiff/ Crossclaim Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE OHIO CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Intervenor Defendant/Crossclaim Plaintiff/Counterclaim Plaintiff. | ) | |

**INSURER-DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Matthew O. Sitzer (*msitzer@shb.com*)
Matthew C. Wolfe (*mwolfe@shb.com*)
Peter F. O'Neill (*pfoneill@shb.com*)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, Illinois  60606
Telephone:     (312) 704-7700

## FACTS CITED IN THE FACTUAL BACKGROUND SECTION OF THE INSURER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF

1. On January 10, 2017, Tommy Harris ("Harris") filed a complaint in the Circuit Court of St. Clair County, Illinois, against three defendants who are not parties to this case. Ex. A.[1]

2. On April 19, 2017, Harris filed a First Amended Complaint ("FAC"), naming as a defendant "City Wide Maintenance of St. Louis," which was the d/b/a name of Durham Enterprises, Inc. ("Durham Enterprises") at the time the FAC was filed. Ex. B.

3. The FAC alleged that Harris suffered "numerous infections" resulting from the defendants' conduct. *Id.* at Count III ¶ 6.

4. The FAC contained the following allegations against Durham Enterprises: (1) that Durham Enterprises "was providing commercial cleaning services to the dialysis center located at 5105 W Main St., Belleville, IL 62226-4728"; and (2) that Durham Enterprises "negligently and carelessly failed to properly clean and sanitize said dialysis center." *Id.* at Count III ¶ 5.

5. Attached to, and filed concurrently with, the FAC was an affidavit of Harris's counsel that attached a Certificate of Merit. *Id.* at Aff. of Samantha S. Unsell (dated April 10, 2017), Certificate of Merit (dated December 29, 2016); *see also* Ex. C at Req. for Admission No. 3 (seeking an admission that Exhibit B to this Statement of Undisputed Facts, which was attached to the actual discovery requests, was a true and accurate copy of the FAC that was filed in April 2017); Ex. D at Resp. to Req. for Admission No. 3 (Harris admitting Request for Admission No. 3).

6. The affidavit stated, among other things, that Harris's counsel had sent Harris's medical records to a "healthcare specialist," and that the "healthcare specialist ha[d] reviewed said

---

[1] All exhibits cited herein refer to the exhibits attached to the Declaration of Peter F. O'Neill in Support of the Insurer-Defendants' Motion for Summary Judgment and Memorandum in Support Thereof, which is being filed concurrently herewith.

records and ha[d] determined that there [was] a reasonable and meritorious cause for the filing of this action." Ex. B at Aff. of Samantha S. Unsell ¶¶ 2–3.

7. The Certificate of Merit was provided by "a medical doctor with an active medical license." *Id.* at Certificate of Merit (dated December 29, 2016).

8. The Certificate of Merit stated, in part, that Harris was "at [a] significantly increased risk of bacterial sepsis" and that Harris was ultimately "diagnosed with both gram positive and gram negative sepsis." *Id.*

9. On May 5, 2017, the Durham Defendants requested that Ohio Security Insurance Company ("Ohio Security") defend Durham Enterprises against Harris's claims pursuant to the commercial package insurance policy, No. BKS (16) 57 07 84 32, issued by Ohio Security to the named insured "DURHAM ENTERPRISES DBA CITY WIDE OF ST LOUIS" ("the Ohio Security Policy"). *See* Dkt. No. 69 ¶ 33; *see also* Ex. E at OSIC000127–29.

10. The Durham Defendants' tender was accompanied by the FAC, affidavit from Harris's counsel, and the Certificate of Merit. Ex. E at OSIC000127–29 (Don Durham emailing the FAC to the Insurer-Defendants).

11. Emily Anderson ("Anderson"), one of the adjusters evaluating Harris's claim, relied on the FAC and Certificate of Merit in making her initial coverage determination. *See, e.g.*, Ex. F at 85:3–13, 133:23–135:16.

12. Based on these documents, Anderson recommended to her manager, Joshua Hilgemann ("Hilgemann"), that the claim be denied pursuant to the Ohio Security Policy's "Fungi or Bacteria Exclusion" ("the Bacteria Exclusion"). *Id.* at 35:18–36:14, 51:13–23, 61:17–22; *see also* Exhibit G at 11:8–12.

13. The Ohio Security Policy includes the following insuring agreement which appears in the coverage form in the CGL coverage part:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . .

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer.

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Ex. E at OSIC000173.

14. The Ohio Security Policy also includes the following definition, which appears in an endorsement in the CGL coverage part:

  **O.**  **BODILY INJURY REDEFINED**

 Under **Section V – Definitions,** Definition **3.** is replaced by the following:

  **3.** "Bodily Injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

*Id.* at OSIC000212.

  15. The Bacteria Exclusion, which appears in an endorsement in the CGL coverage part, states as follows:

  A. The following exclusion is added to Paragraph **2.** Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2.**  **Exclusions**

    This insurance does not apply to:

    **Fungi or Bacteria**

    **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity. . . .

   This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption. . . .

*Id.* at OSIC000195.

  16. Hilgemann testified that he was the one who ultimately made the final decision regarding whether to deny coverage. Ex. G at 11:8–12.

17. Hilgemann testified that the conclusion that there was no possibility of coverage was "straightforward . . . based on the information provided," which included the FAC, affidavit and Certificate of Merit. *Id.* at 91:7–23, 112:5–12 (testifying that the coverage determination was straightforward based on the information provided); 30:16–32:1, 35:19–23, 93:8–11, 94:3–15 (testifying that the coverage determination was made based upon a review of the FAC, affidavit and Certificate of Merit).

18. The Bacteria Exclusion also contains an exception, which affords coverage for injuries resulting from "bacteria that are, are on, or are contained in, a good or product intended for bodily consumption" ("the Consumption Exception"). Ex. E at OSIC000195.

19. Hilgemann's conclusion that there was no possibility of coverage was not altered by the Consumption Exception because, as he testified:

> So as I said, I based it on the Count 3 [of the FAC] information provided and the Certificate of Merit, in combination, which stated it was failure to properly sanitize the dialysis facility. I did not believe that it involved a good or a product based on the information presented.

Ex. G at 80:18–23; *see also id.* at 82:1–8, 83:11–16, 91:14–92:2, 119:10–12.

20. The denial letter was sent on May 15, 2017. Ex. E at OSIC000113–17.

21. The denial letter stated that "Ohio Security . . . denies coverage for this Lawsuit and will not participate in the defense of City Wide or pay any settlements or judgments on its behalf." *Id.*

22. The denial letter recited the Bacteria Exclusion, and later stated that the basis for the denial of coverage was that the "plaintiff alleges damages as a result of bacterial infections." *Id.* at OSIC000115–16.

23. The denial letter also stated: "If you have any additional information you would like us to consider concerning this Lawsuit, please forward it to us." *Id.* at OSIC000116.

24. The Durham Defendants never contacted Ohio Security after May 15, 2017. Ex. H.

5

25. On July 18, 2019, Harris and the Durham Defendants entered into a "Covenant Not To Execute And Limit Recovery" (the "Covenant"). Ex. I.

26. Shortly after entering into the Covenant, Harris and the Durham Defendants participated in a short (less than a day), uncontested, bench trial. *See* Dkt. No. 36 at 2; Dkt. No. 63 at 3.

27. Following that trial, Harris's counsel emailed the trial court proposed findings of fact and conclusions of law ("the Proposed Judgment"). *See* Ex. J at 52:4–7.

28. The Durham Defendants did not contest the Proposed Judgment, or file their own competing version. *See* Ex. I; Ex. J at 6:3–4.

29. The trial court adopted the Proposed Judgment and entered judgment against the Durham Defendants in the amount of $2,080,585.95. Ex. K.

30. On December 2, 2019, after the trial court's judgment became final, Harris filed a "First Amended Complaint" in the same case to add claims for declaratory judgment against incorrectly-named entities "Liberty Mutual Insurance" and "Ohio Security," seeking declarations that those entities breached their duty to defend the Durham Defendants, and that they were required to indemnify the Durham Defendants for the trial court's judgment. *See* Dkt. No. 40-1 at Ex. A.

31. Ohio Security subsequently removed the case to this Court (*see* Dkt. No. 40-1), and filed a counterclaim (against Harris) and cross-claim (against the Durham Defendants) for declaratory judgment. *See* Dkt. No. 8 (Ohio Security's original pleading); *see also* Dkt. No. 56 (Ohio Security's operative pleading).

32. The Durham Defendants then filed cross-claims against Ohio Security and Liberty Mutual Insurance Company ("Liberty Mutual") for bad faith, breach of fiduciary duty, and for punitive damages. Dkt. Nos. 37–38.

33. This Court previously ruled that Harris and the Durham Defendants are properly realigned together as plaintiffs in this case. *See* Dkt. No. 36 at 10.

34. This Court dismissed the Durham Defendants' fiduciary duty and punitive damage cross-claims, and also dismissed the bad faith claim insofar as it was premised on the Insurer-Defendants' alleged bad faith breach of the duty to defend. *See Harris v. Durham Enterprises, Inc.*, No. 20-CV-72-JPG, 2020 WL 6270897, at *2–6 (S.D. Ill. Oct. 26, 2020).

35. This Court also rejected the Durham Defendants' argument that Ohio Security was "collaterally estopped by the state court judgment entered earlier in this case from contesting its duty to defend." *Id.* at *2; *see also id.* at *3 ("Collateral estoppel simply does not apply to the Circuit Court's decision that OSIC owed a duty to defend the Durham defendants under the insurance policy.").

36. With leave of Court, the Durham Defendants refiled their cross-claims, and now assert claims for breach of contract and bad faith failure to settle. *See* Dkt. No. 69.

37. As of July 2, 2021, the Durham Defendants have not filed an answer to Ohio Security's operative cross-claims. *See generally* Dkt. (showing that Ohio Security's operative cross-claims were filed August 12, 2020 (Dkt. No. 56), and that the Durham Defendants failed to file an answer thereto).

38. With this Court's permission, The Ohio Casualty Insurance Company ("Ohio Casualty") then intervened given that: (1) it issued the Durham Defendants a commercial umbrella policy, No. USO (16) 57 07 84 32 ("the Ohio Casualty Policy"), which was in effect for the same years as the Ohio Security Policy, and which could potentially be implicated due to the size of the judgment; (2) the Ohio Casualty Policy includes a "Fungi or Bacteria Exclusion" that is identical (in all material respects) to the one in the Ohio Security Policy; and (3) the Durham Defendants never gave Ohio Casualty notice of Harris's claims under the terms of the Ohio Casualty Policy.

*See* Dkt. Nos. 53–54, 64, 66; Ex. G at 105:8–10 (Hilgemann testifying that there "wasn't a claim set up under the umbrella"), 120:11–17 (testifying that "[t]here wasn't a claim submitted . . . by the policyholder" under the Ohio Casualty Policy).

39. At a hearing on March 23, 2021, the Court ordered the parties to brief the duty to defend issue before addressing any indemnity issues. *See* Ex. J at 56–65.

**FACTS CITED IN THE ARGUMENT SECTION
OF THE INSURER-DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

40. Harris's expert in the underlying case testified that Harris suffered from bacterial infections. *See* Ex. L at 18:2–20:01.

41. Harris originally produced his expert's deposition in redacted form. *See* Ex. M at 18:2–20:01.

42. Ohio Casualty issued to first named insured "DURHAM ENTERPRISES DBA CITY WIDE OF ST LOUIS" a commercial umbrella policy, No. USO (16) 57 07 84 32, with a policy period of December 30, 2015 to December 30, 2016. *See* Ex. N.

43. The Ohio Casualty Policy includes, by virtue of an endorsement, the following insuring agreement:

> **I.  COVERAGE**
>
> **A.**  We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay for damages is limited as described in the **INSURING AGREEMENT, SECTION II. LIMITS OF INSURANCE.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SECTION III. DEFENSE.**

*Id.* at OCIC000024.

44. The Ohio Casualty Policy defines "bodily injury" as "physical injury, sickness, or disease, including death of a person. 'Bodily injury' also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person." *Id.* at OCIC000029.

45. The Ohio Casualty Policy also includes the following exclusion, which is identical in all material respects to the Bacteria Exclusion in the Ohio Security Policy:

**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE PART

The following is added to **Section IV – EXCLUSIONS:**

This insurance does not apply to:

**1.** "Bodily injury", "property damage", "personal injury" or "advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**2.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any "Insured" or by any other person or entity. . . .

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption, but only to the extent that insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy. . . .

*Id.* at OCIC000048.

46. The Insurer-Defendants served interrogatories asking Harris and the Durham Defendants the following question: "Do you contend that the Fungi or Bacteria Exclusion does

9

not apply? If so, state the basis for your contention and identify each and every fact and/or policy provision supporting." Exs. O, P, Q, R.

        47.       Harris responded to the interrogatory referenced in Paragraph 46 as follows:

> It is plaintiff's contention that the insurance companies, Ohio and Liberty, are estopped from raising policy defenses, such as the aforementioned exclusions, because they breached their duty to defend by failing to defend under a reservation of rights or file a timely declaratory judgment. Further, based on the evidence adduced at the trial in the underlying matter, the exclusion would not apply as there isn't evidence that this was a bacterial or fungal infection.

Exs. O, P.

        48.       The Durham Defendants responded to the interrogatory referenced in Paragraph 46 as follows:

> Objection in that this contention interrogatory is premature in that discovery has not been concluded. Subject to that objection and reserving the right to supplement this interrogatory after the conclusion of discovery, the Durham Defendants do indeed contend that the "Fungi or Bacteria Exclusion" does not apply. Again, subject to the objection, the Durham Defendants direct Ohio Security to the Judgment of the Trial Court, the language of the exclusion and the testimony of Emily Anderson who testified that she spent possibly two to four hours "investigating" the Harris claim before recommending the denial of the claim and denial of providing a defense without the benefit of any medical background nor medical expert assistance as well as no legal background as to Missouri law.

Exs. Q, R.

        49.       The Ohio Security Policy, the affidavit attached thereto, and the denial letter, all state that Ohio Security—not Liberty Mutual—was the underwriter of the Ohio Security Policy. *See* Ex. E at OSIC000113–17 (denial letter), OSIC000146 (affidavit attached to certified copy of Ohio Security Policy), OSIC000165–172 (Ohio Security Policy declarations pages noting that Ohio Security Insurance Company is the one providing coverage under the policy).

Dated: July 2, 2021            Respectfully Submitted,

           **OHIO SECURITY INSURANCE COMPANY and LIBERTY MUTUAL INSURANCE COMPANY and OHIO CASUALTY INSURANCE COMPANY**

           By:   */s/  Matthew O. Sitzer*
           One of Its Attorneys

Matthew O. Sitzer (#6210083)
Matthew C. Wolfe (#6307345)
Peter F. O'Neill (#6324429)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive, Suite 4700
Chicago, Illinois 60606
Telephone:  (312) 704-7700
Facsimile:   (312) 558-1195
msitzer@shb.com
mwolfe@shb.com
pfoneill@shb.com

## CERTIFICATE OF SERVICE

I, Matthew O. Sitzer, an attorney, hereby certify that, on **July 2, 2021**, I caused a true and complete copy of the foregoing **INSURER-DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS** to be filed electronically. Notice of this filing will be sent to all parties below registered on this Court's CM/ECF system. Parties may access this filing through the Court's system.

>Samantha Unsell
>**KEEFE, KEEFE & UNSELL, P.C.**
>#6 Executive Woods Court
>Belleville, Illinois 62226
>Telephone: (618) 236-2221
>Facsimile: (618) 236-2194
>Email: ashley@tqkeefe.com
>         samunsell@gmail.com
>
>*Counsel for Tommy Harris*
>
>Ted F. Frapolli
>**LAW OFFICES OF TED F. FRAPOLLI**
>1714 Deer Tracks Trail, Suite 200
>St. Louis, Missouri 63131
>Telephone: (314) 993-4261
>Facsimile: (314) 993-3367
>Email: ted@tffrapollilaw.com
>
>*Counsel for Durham Enterprises, Inc. and Don Durham*

                                                                                      _/s/ Matthew O. Sitzer_