## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| TOMMY HARRIS, | ) | |
|       Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| DURHAM ENTERPRISES, INC. and DON DURHAM, | ) | |
| | ) | No. 3:20-CV-00072-JPG |
|       Defendants/Crossclaim Plaintiffs/ | ) | |
|       Crossclaim Defendants, | ) | Honorable J. Phil Gilbert |
| | ) | |
|    and | ) | |
| | ) | CJRA Track:  B |
| LIBERTY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
|       Defendant/Crossclaim Defendant, | ) | |
| | ) | |
|    and | ) | |
| | ) | |
| OHIO SECURITY INSURANCE COMPANY, | ) | |
| | ) | |
|       Defendant/Counterclaim Plaintiff/ | ) | |
|       Crossclaim Plaintiff/ | ) | |
|       Crossclaim Defendant, | ) | |
| | ) | |
|    and | ) | |
| | ) | |
| THE OHIO CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
|       Intervenor Defendant/Crossclaim | ) | |
|       Plaintiff/Counterclaim Plaintiff. | ) | |

### INSURER-DEFENDANTS' RESPONSE TO THE
### MOTIONS FOR SUMMARY JUDGMENT FILED BY TOMMY HARRIS
### AND BY DON DURHAM AND DURHAM ENTERPRISES, INC.

Matthew O. Sitzer (*msitzer@shb.com*)
Matthew C. Wolfe (*mwolfe@shb.com*)
Peter F. O'Neill (*pfoneill@shb.com*)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, Illinois  60606
Telephone:    (312) 704-7700

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.      Ohio Security Had No Duty To Defend. ........................................................ 3

        A.      It Is Undisputed That, From The Outset, Harris's Alleged Injuries Were Bacterial. ............................................................................................................. 3

        B.      Harris and the Durham Defendants Have Waived Any Argument That The Exception To The Bacteria Exclusion Applied. ...................................... 6

        C.      The Exception Plainly Did Not Apply At the Outset Of The Case. ...................... 8

                1.      A Dialysis Facility Cannot Reasonably Be Interpreted To Be A Good Or Product Intended For Bodily Consumption. ............................... 8

                2.      The Court Should Disregard Harris And The Durham Defendants' Efforts To Read Factual Assumptions Into The FAC. ............................ 10

                3.      Harris And The Durham Defendants Fail: (1) To Identify The Good Or Product From Which Harris's Injuries Allegedly Arose; And (2) To Describe How That Good Or Product Is One Intended For Bodily Consumption. .......................................................................... 12

        D.      Ohio Security's Investigation Was Reasonable In Light Of The Facts Alleged And Known At The Outset Of The Case. ................................. 14

II.     It Is Undisputed That Ohio Casualty Had No Duty To Defend. ....................... 18

III.    It Is Undisputed That Liberty Mutual Did Not Underwrite The Ohio Security Policy. ............................................................................................................ 19

IV.     The Insurer-Defendants Are Not Collaterally Estopped From Contesting The Duty To Indemnify. ..................................................................................... 20

CONCLUSION ............................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*AMCO Ins. Co. v. Swagat Grp., LLC*,
  2009 WL 4015766 (C.D. Ill. Oct. 28, 2009) ...........................................................................9

*AMCO Ins. Co. v. Swagat Grp., LLC*,
  No. 07-3330, 2009 WL 331539 (C.D. Ill. Feb. 10, 2009) ......................................................9

*Anderson v. Donahoe*,
  699 F.3d 989 (7th Cir. 2012) .................................................................................................7

*Bruegge v. Metro. Prop. & Cas. Ins. Co.*,
  No. 13-CV-1256-JPG-DGW, 2014 WL 2535947 (S.D. Ill. June 5, 2014) ........................3, 20

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................................19

*Esicorp, Inc. v. Liberty Mut. Ins. Co.*,
  193 F.3d 966 (8th Cir. 1999) ...................................................................................... *passim*

*Fischer v. First Am. Title Ins. Co.*,
  388 S.W.3d 181 (Mo. Ct. App. 2012) ...................................................................................19

*Garrison v. Choh*,
  719 N.E.2d 237 (Ill. App. Ct. 1999) .......................................................................................6

*Harper v. Vigilant Ins. Co.*,
  433 F.3d 521 (7th Cir. 2005) ................................................................................................19

*Hartford Underwriter's Ins. Co. v. Est. of Turks*,
  206 F. Supp. 2d 968 (E.D. Mo. 2002) ......................................................................... *passim*

*Heinecke v. Aurora Healthcare, Inc.*,
  2013 WI App 133 ................................................................................................................10

*Illinois Nat. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*,
  No. 12-CV-2300, 2013 WL 1196598 (N.D. Ill. Mar. 22, 2013) .............................................19

*Interstate Bakeries Corp. v. OneBeacon Ins. Co.*,
  686 F.3d 539 (8th Cir. 2012) ...................................................................................... *passim*

*Keller v. United States*,
  58 F.3d 1194 (7th Cir. 1995) ..................................................................................................5

*Luken v. Ind. Ins. Co.*,
    No. 13-CV-0991-MJR-PMF, 2014 WL 2157388 (S.D. Ill. May 22, 2014) .......................3, 20

*Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*,
    651 F. Supp. 2d 1367 (N.D. Ga. 2009) ...................................................................13

*NGM Ins. Co. v. Low Country Finish Carpentry, Inc.*,
    No. CV 2:11-1016, 2012 WL 13005316 (D.S.C. Oct. 31, 2012) ............................9

*Penn-Star Ins. Co. v. Zeller Properties, Inc.*,
    2019 WL 2264169 (S.D. Ill. May 24, 2019)............................................................9

*Penn-Star Ins. Co. v. Zeller Properties, Inc.*,
    No. 3:17-CV-1264-NJR, 2020 WL 1442666............................................................9

*Piatt v. Ind. Lumbermen's Mut. Ins. Co.*,
    461 S.W.3d 788 (Mo. 2015) (en banc) ...................................................................8

*Progressive Cty. Mut. Ins. Co. v. Fetty*,
    No. 3:19-CV-316-ECM, 2020 WL 265681 (M.D. Ala. Jan. 17, 2020)....................7

*Superior Equip. Co. v. Maryland Cas. Co.*,
    986 S.W.2d 477 (Mo. Ct. App. 1998)..............................................................10, 11

*Trainwreck W. Inc. v. Burlington Ins. Co.*,
    235 S.W.3d 33 (Mo. Ct. App. 2007)........................................................... *passim*

*United States v. Ledbetter*,
    No. 4:15-CV-136-RN, 2016 WL 4148304 (E.D.N.C. Aug. 4, 2016)........................7

*United States v. Schuerman*,
    No. 13-CV-560-WDS-DGW, 2013 WL 5609344 (S.D. Ill. Oct. 11, 2013) ............6

*Westport Ins. Corp. v. VN Hotel Grp., LLC*,
    761 F. Supp. 2d 1337 (M.D. Fla. 2010),
    *aff'd*, 513 F. App'x 927 (11th Cir. 2013)...............................................................13

*WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*,
    231 F. Supp. 3d 313 (W.D. Mo. 2017),
    *aff'd on other grounds*, 897 F.3d 987 (8th Cir. 2018) ............................................8

**Statutes**

720 Ill. Comp. Stat. Ann. 5/32-2.............................................................................5

735 Ill. Comp. Stat. Ann. 5/2-622(a)(1)..................................................................5

735 Ill. Comp. Stat. Ann. 5/2-622(e) ......................................................................5

**Page**

**Other Authorities**

*Underwriting*, Black's Law Dictionary (11th ed. 2019)................................................................19

## INTRODUCTION

The Court should deny the motions for summary judgment filed by Harris and the Durham Defendants,[1] and grant the motion for summary judgment filed by the Insurer-Defendants.

Faced with the reality that Harris's FAC and Certificate of Merit plainly alleged bodily injury resulting from *bacterial* infections and that the Ohio Security Policy's Bacteria Exclusion applies to such injury, Harris and the Durham Defendants now desperately pivot to an exclusionary exception they have never before invoked. Neither Harris nor the Durham Defendants pled this theory or identified it in their responses to Ohio Security's contention interrogatories, despite having the burden to do so. *See Hartford Underwriter's Ins. Co. v. Est. of Turks*, 206 F. Supp. 2d 968, 977 (E.D. Mo. 2002) (citation omitted) (noting that "[t]he burden of proving the applicability of an exception to an exclusion is placed on the party seeking the benefit of the exception," and holding that an insurer had no duty to defend where the insured "failed to provide the Court with any authority to support its claim" that the exception applies). As a result, they have waived the argument, and the Court should disregard it.

Even if the Court disregards their waiver, however, the exception still does not apply. It makes the Bacteria Exclusion itself inapplicable only where the injury arises from "bacteria that are, are on, or are contained in, a good or product intended for bodily consumption." But the only allegation made against Durham is that it negligently failed to clean and sanitize the dialysis *facility* where Harris was receiving treatment. A dialysis facility is plainly not a "good or product intended for bodily consumption," and neither Harris nor the Durham Defendants argue otherwise.

Indeed, neither Harris nor the Durham Defendants attempt to identify any "good or product" from which the bacteria that caused Harris's infections could have arisen. Nor do they

---

[1]     Unless otherwise noted, all defined terms have the same meaning as set forth in the Insurer-Defendants' Motion for Summary Judgment and Memorandum in Support Thereof. *See* Dkt. No. 106.

attempt to offer any analysis of how that unidentified good or product would be "intended for bodily consumption."  Instead, they simply ask the Court to assume their burden for them, *see Est. of Turks*, 206 F. Supp. 2d at 977, and to read factual assumptions into the FAC in violation of Missouri law. *See, e.g.*, *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 542–43 (8th Cir. 2012) (applying Missouri law) (observing that, "[i]n determining whether there is a duty to defend, a court is barred from 'reading into a complaint any factual assumptions'") (citation omitted).

Regrettably, the Durham Defendants also appear to have misrepresented evidence. Attached to the Durham Defendants' motion is an altered version of the trial court's Judgment in the underlying case, which version re-orders the pages in an apparent effort to omit from the Judgment the memorialized testimony of Harris's expert that, in his opinion, Durham's negligence "creat[ed] an environment where infection is easily spread *between patients and staff*." Suggesting this alteration of evidence may have been intentional is that handwritten numbers appear at the bottom of the Durham Defendants' version of the Judgment, which numbers do not exist in the actual Judgment. The Durham Defendants' version of this document appears to have been altered so the Court could not see this memorialized testimony, which plainly demonstrates that Harris's infections came from the staff at the dialysis facility, not a "good or product intended for bodily consumption."  Summary judgment should accordingly be granted in favor of Ohio Security because it is undisputed that the Bacteria Exclusion applied to Harris's claims. *See infra* Section I.C.3.

The Court should grant summary judgment in favor of Ohio Casualty for the same reason, as the Ohio Casualty Policy contains a materially identical Bacteria Exclusion. Indeed, it appears that Harris and the Durham Defendants concede that Ohio Casualty had no duty to defend, as neither party argues otherwise in its brief (again, despite having the burden to do so).

Finally, the Court should grant summary judgment in favor of Liberty Mutual because there is no record evidence demonstrating that Liberty Mutual underwrote the Ohio Security Policy.[2] There is therefore no evidence of a contractual relationship from which the duty to defend could have arisen. *See Luken v. Ind. Ins. Co.*, No. 13-CV-0991-MJR-PMF, 2014 WL 2157388, at *6 (S.D. Ill. May 22, 2014) (granting summary judgment in favor of three insurers that "did not issue any liability policy to the [insured]"); *Bruegge v. Metro. Prop. & Cas. Ins. Co.*, No. 13-CV-1256-JPG-DGW, 2014 WL 2535947, at *2 (S.D. Ill. June 5, 2014) (Gilbert, J.) (dismissing claims for "breach of insurance contract and bad faith failure to pay a claim" against insurer that did not issue the relevant policy, reasoning that "[t]here is no basis . . . for holding [the insurer] liable for a contract to which it was not a party").

Summary judgment should accordingly be granted in favor of the Insurer-Defendants because none of them owed a duty to defend. And because the duty to defend is "broader than the duty to indemnify," *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 44 (Mo. Ct. App. 2007), that should be the end of this matter.

## ARGUMENT

### I.    Ohio Security Had No Duty To Defend.

#### A.    It Is Undisputed That, From The Outset, Harris's Alleged Injuries Were Bacterial.

Neither Harris nor the Durham Defendants offer any evidence that Harris's infections were anything other than bacterial. *See generally* Dkt. Nos. 104–05. Nor could they, as the Certificate of Merit to Harris's own lawsuit—which Harris admits was filed concurrently with his FAC, and which Durham admits was provided to Ohio Security—states that Harris was "at [a] significantly

---

[2]    Defendants appear to have added Liberty Mutual to this suit for nothing more than because certain policies and correspondence of Ohio Security and Ohio Casualty were printed with a Liberty Mutual Insurance Group service mark.

increased risk of *bacterial* sepsis" and that Harris was ultimately "diagnosed with both gram positive and gram negative sepsis." SUF ¶¶ 7–8 (emphasis added).[3]

Instead, Harris and the Durham Defendants seem to argue that Ohio Security should have disregarded the Certificate of Merit because it could have conceivably been authored by an unqualified physician. *See, e.g.*, Dkt. No. 104 at 14 (arguing that the Insurer-Defendants "did not attempt to determine who authored the certificate of merit, nor did they inquire as to the training, education, or experience of the author"); Dkt. No. 105 at 38 (arguing that the Certificate of Merit was drafted "by an unknown person who reported to be a medical doctor"). For three reasons this argument is not only wrong, but absurd.

***First***, it ignores the fact that Harris's own lawyer (and attorney of record in <u>this</u> case) stated—in an affidavit executed under penalty of perjury—that she agreed with the opinion of the healthcare specialist who provided the Certificate of Merit. *See* Ex. B at Aff. of Samantha S. Unsell (dated April 10, 2017).[4] Specifically, Harris's counsel swore:

> 2.     That she has obtained all relevant medical records in this case and reviewed them, and likewise sent said records to a healthcare specialist.
>
> 3.     That said healthcare specialist has reviewed said records and has determined that there is a reasonable and meritorious cause for the filing of this action.
>
> 4.     That Samantha S. Unsell, has likewise reviewed these records as well as the opinion of the healthcare provider and likewise concludes that there is a reasonable and meritorious basis for proceeding with this case against: City Wide Maintenance of St. Louis [Durham].
>
> 5.     That it is the opinion of both the healthcare specialist and plaintiff's counsel that the complained of acts or omissions on the part of the defendant proximately caused the damages complained of herein.

---

[3]     References to "SUF ¶ __" refer to the Insurer-Defendants' Statement of Undisputed Material Facts. *See* Dkt. No. 106-1.

[4]     References to "Ex. __" refer to the exhibits attached to the Declaration of Peter F. O'Neill in Support of the Insurer-Defendants' Motion for Summary Judgment and Memorandum in Support Thereof. *See* Dkt. Nos. 106-3–106-20.

*Id.* The Certificate of Merit is thus a judicial admission that binds Harris on the fact that his infections were alleged to be bacterial. *See, e.g.*, *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) (observing that judicial admissions: (1) "are formal concessions in the pleadings, or stipulations by a party *or its counsel*, that are binding upon the party making them"; (2) "may not be controverted at trial or on appeal"; and (3) are "conclusive unless the court allows [them] to be withdrawn") (citation omitted) (emphasis added).

**Second**, Harris and the Durham Defendants ignore that the Illinois statute governing certificates of merit requires:

> That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) *is knowledgeable in the relevant issues involved in the particular action*; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years *in the same area of health care or medicine that is at issue in the particular action*; and (iii) is qualified by experience or demonstrated competence *in the subject of the case*.

735 Ill. Comp. Stat. Ann. 5/2-622(a)(1) (emphasis added). The statute also states that:

> Allegations and denials in the affidavit, made without reasonable cause and found to be untrue, shall subject the party pleading them or his attorney, or both, to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with reasonable attorneys' fees.

735 Ill. Comp. Stat. Ann. 5/2-622(e). The statute therefore requires that the certificate of merit be provided by a trained and qualified physician capable of opining as to the nature of the injuries at issue. Surely, counsel for Harris would not ignore this statutory directive by knowingly filing a false affidavit that could subject her to financial penalties under 735 Ill. Comp. Stat. Ann. 5/2-622(e), and criminal penalties under 720 Ill. Comp. Stat. Ann. 5/32-2.

**Third**, the contention that Ohio Security should have ignored the Certificate of Merit contradicts the argument—made by both Harris and the Durham Defendants—that the insurer must consider the pleadings, and also any actual facts known to it at the time the claim is tendered. *See* Dkt. No. 104 at 4 (arguing that an insurer must consider the complaint and any actual facts

known to it); Dkt. No. 105 at 37 (arguing that, in addition to the complaint, "*[t]he insurer cannot ignore safely actual facts known to it . . .*") (emphasis in original). The Illinois state court case cited by Harris does not change this well-settled rule, as that case: (1) did not involve the issue of whether an insurer could consider a certificate of merit for purposes of its coverage analysis; and (2) specifically stated that the rule that a certificate of merit "cannot be said to be incorporated into the complaint" only applies to the process of "determining the misconduct of the defendant for which the plaintiff seeks recovery." *Garrison v. Choh*, 719 N.E.2d 237, 243 (Ill. App. Ct. 1999). The Certificate of Merit further described the nature of Harris's bacterial infections, and Ohio Security was required to rely on it under Missouri law. *See Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 969 (8th Cir. 1999) (noting that an insurer must consider "actual facts" in addition to the pleadings) (citing *Marshall's U.S. Auto Supply v. Md. Cas. Co.*, 189 S.W.2d 529, 531 (Mo. 1945)).

### B.   Harris and the Durham Defendants Have Waived Any Argument That The Exception To The Bacteria Exclusion Applied.

Recognizing that the FAC, Certificate of Merit and accompanying affidavit prove there was no duty to defend, Harris and the Durham Defendants now argue—for the first time—that an exception in the Bacteria Exclusion applied. *See generally* Dkt. Nos. 104–05. This argument borders on speciousness (as discussed below), but, in all events, it has plainly been waived.

As set forth in the Insurer-Defendants' motion for summary judgment (*see* Dkt. No. 106 at 11–14), the Durham Defendants failed even to answer Ohio Security's cross-claims for declaratory judgment. *See generally* Dkt. (showing that Ohio Security's operative cross-claims were filed August 12, 2020, and that the Durham Defendants failed to file an answer thereto). Ohio Security's allegations should therefore be considered admitted, and judgment should be entered in favor of Ohio Security. *See, e.g.*, *United States v. Schuerman*, No. 13-CV-560-WDS-DGW, 2013 WL 5609344, at *2 (S.D. Ill. Oct. 11, 2013) (entering default judgment against a defendant, reasoning

that, "[i]n light of Schuerman's failure to respond, the allegations against him are deemed true");
*Progressive Cty. Mut. Ins. Co. v. Fetty*, No. 3:19-CV-316-ECM, 2020 WL 265681, at *3
(M.D. Ala. Jan. 17, 2020) (same, noting that, "by failing to respond," the insured in a declaratory
judgment action "admit[ted] as true" the allegations in the insurer's complaint); *United States v.
Ledbetter*, No. 4:15-CV-136-RN, 2016 WL 4148304, at *2 (E.D.N.C. Aug. 4, 2016) (same,
reasoning that the defendant "conceded the truth of [plaintiff's] allegations by failing to respond
to the Complaint").

In addition, despite the fact that "[t]he burden of proving the applicability of an exception
to an exclusion is placed on the party seeking the benefit of the exception," *Est. of Turks*, 206 F.
Supp. 2d at 977 (citation omitted), neither Harris nor the Durham Defendants articulated in any of
their pleadings that they intended to rely on an exception in the Bacteria Exclusion. *See* Dkt.
Nos. 34, 61 (Harris's original (Dkt. No. 34) and operative (Dkt. No. 61) answers to Ohio Security's
cross-claims); Dkt. No. 38 (Durham Defendants' original answer—which is no longer operative—
to Ohio Security's original cross-claims); Dkt. No. 49 (Harris's amended, operative complaint);
Dkt. No. 37 (Durham Defendants' original cross-claims against Ohio Security and Liberty
Mutual); Dkt. No. 69 (Durham Defendants' amended, operative cross-claims against Ohio
Security and Liberty Mutual).

When the Insurer-Defendants issued contention interrogatories seeking *all* the bases for
Harris and the Durham Defendants' claim that the Bacteria Exclusion did not apply, moreover,
neither Harris nor the Durham Defendants ever even mentioned, let alone relied on, the exception
in response to these contention interrogatories (*see* SUF ¶¶ 46–48), further precluding any reliance
by them on the exception on their motions for summary judgment. *See, e.g.*, *Anderson v. Donahoe*,
699 F.3d 989, 997 (7th Cir. 2012) (noting that a plaintiff may not amend its complaint by
introducing new legal theories during summary judgment briefing that were not included in the

complaint); *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 231 F. Supp. 3d 313, 318 (W.D. Mo. 2017), *aff'd on other grounds*, 897 F.3d 987 (8th Cir. 2018) (holding that an insured could not raise new claims for the first time on a motion for summary judgment).

The Court should therefore hold that any argument regarding the applicability of the exception to the Bacteria Exclusion has been waived.

### C.    The Exception Plainly Did Not Apply At the Outset Of The Case.

Even if the Court were to look past this waiver, the result would not change because neither Harris nor the Durham Defendants have met their burden of proving that the exception applies. *See Est. of Turks*, 206 F. Supp. 2d at 977 (citation omitted) (noting that "[t]he burden of proving the applicability of an exception to an exclusion is placed on the party seeking the benefit of the exception," and granting summary judgment in favor of an insurer where the insured "failed to provide the Court with any authority to support its claim" that the exception applied).

### 1.    A Dialysis Facility Cannot Reasonably Be Interpreted To Be A Good Or Product Intended For Bodily Consumption.

The duty to defend analysis focuses on the complaint's allegations "against the insured . . . ." *Piatt v. Ind. Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. 2015) (en banc); *see also Esicorp, Inc.*, 193 F.3d at 969 (observing that the focus is on the "complaint against the insured"). Moreover, "[i]n determining whether there is a duty to defend, a court is barred from 'reading into a complaint any factual assumptions.'" *Interstate Bakeries Corp.*, 686 F.3d at 542–43 (quoting *Penn–Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 599 (Mo. Ct. App. 2010)).

The FAC alleged that Harris suffered a series of bacterial infections because the Durham Defendants, who provided services as the dialysis facility's custodian, "failed to properly clean and sanitize [the] dialysis center" where Harris was receiving dialysis treatment. SUF ¶¶ 4, 19. Joshua Hilgemann, the individual responsible for making the coverage determination on behalf of

Ohio Security, ultimately concluded that a dialysis facility would not qualify as a "good or product intended for bodily consumption." *Id.* Any other conclusion would be unreasonable and contrary to any reasonable inference that could be drawn from the FAC.[5] *See, e.g.*, *Penn-Star Ins. Co. v. Zeller Properties, Inc.*, No. 3:17-CV-1264-NJR, 2020 WL 1442666, at *2 (holding that identical bacteria exclusion, with an identical exception, barred coverage where the underlying plaintiff alleged injuries resulting from exposure to "toxic mold" that "buil[t] up on HVAC vents" and "gr[ew] on desks and office furniture")[6]; *AMCO Ins. Co. v. Swagat Grp., LLC*, No. 07-3330, 2009 WL 331539, at *4 (C.D. Ill. Feb. 10, 2009) (holding that identical bacteria exclusion, with an identical exception, barred coverage where the underlying plaintiff alleged "that guests of the Hotel suffered injuries after coming in contact with bacteria on the Hotel premises");[7] *NGM Ins. Co. v. Low Country Finish Carpentry, Inc.*, No. CV 2:11-1016, 2012 WL 13005316, at *4 (D.S.C. Oct. 31, 2012) (holding that identical bacteria exclusion, with an identical exception, eliminated any coverage for damage resulting from "high levels of mold or mildew [that] developed throughout the home including within the window sills, interior and exterior trim, interior wall cavities and baseboards, fascia, finished and subflooring, floor joints, ceilings, and around exterior windows," noting that "[i]n a case where a plaintiff alleges injuries stemming from bacteria or mold in a wall having seeped into the ambient air—the very type of claim intended to be excluded

---

[5]     Furthermore, it is undisputed that the Durham Defendants never provided any additional information to Ohio Security besides the FAC and Certificate of Merit—even though Ohio Security expressly invited them to. *See* SUF ¶¶ 23–24. Accordingly, all that is at issue is what "should have been reasonably apparent" to Ohio Security from the materials that were actually submitted—the FAC. *Esicorp, Inc.*, 193 F.3d at 969, n.1.

[6]     Although it was not cited in the court's opinion, the policy at issue in *Penn-Star Insurance Company* contained an exception identical to the one in the Ohio Security Policy. *See Penn-Star Ins. Co. v. Zeller Properties, Inc.*, 2019 WL 2264169 (S.D. Ill. May 24, 2019).

[7]     Although it was not cited in the court's opinion, the policy at issue in *AMCO Insurance Co.* contained an exception identical to the one in the Ohio Security Policy. *See AMCO Ins. Co. v. Swagat Grp., LLC*, 2009 WL 4015766 (C.D. Ill. Oct. 28, 2009).

in the first place—there is no doubt that the insurer will not be liable, and the exception will not apply") (citation and internal quotation marks omitted); *Heinecke v. Aurora Healthcare, Inc.*, 2013 WI App 133, ¶¶ 12–19 (holding that identical bacteria exclusion, with an identical exception, eliminated any coverage for claims that plaintiffs contracted Legionnaire's disease after they were exposed to bacteria present in the water of a decorative water fountain located in a hospital lobby).

### 2.     The Court Should Disregard Harris And The Durham Defendants' Efforts To Read Factual Assumptions Into The FAC.

Harris and the Durham Defendants implore the Court to read into Durham's alleged failure to clean the dialysis facility an allegation that Durham also failed to clean all the "goods or products intended for bodily consumption" within that facility. But that argument flatly contradicts the Eight Circuit's opinion in *Interstate Bakeries Corp.*, which observed that, "[i]n determining whether there is a duty to defend, a court is barred from 'reading into a complaint any factual assumptions.'" 686 F.3d at 542–43 (quoting *Penn–Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 599 (Mo. Ct. App. 2010)).

Indeed, the Eight Circuit in *Interstate Bakeries Corp.* examined "[t]he limits of the inferences [a court] may draw from factual allegations in the underlying complaint" for purposes of a duty to defend analysis under Missouri law. *Interstate Bakeries Corp.*, 686 F.3d at 544. The Court observed that, "[a]lthough Missouri law favors insured parties by determining an insurer's duty to defend based on whether certain facts 'give rise to a claim potentially within the policy's coverage,' . . . use of the word "potentially" does not render boundless the duty to defend." *Id.* The Court ultimately held that the underlying allegations did not "give rise to a claim potentially within the policy's coverage," and that the insured's plea for the Court to infer certain facts from the allegations "would require an unacceptable degree of imagination." *Id.* at 545.

In support of its holding, the Court relied on the Missouri Court of Appeals' decision in *Superior Equip. Co. v. Maryland Cas. Co.*, 986 S.W.2d 477 (Mo. Ct. App. 1998), a case which the

Durham Defendants cite. *See* Dkt. No. 105 at 32. In *Superior Equip. Co.*, the underlying plaintiff "sought to recover from [the insured] the 'response costs' it had incurred or would incur in the future to clean up hazardous substances which [the insured] allegedly transported and deposited" at a certain location. 986 S.W.2d at 479–80. Specifically, the underlying plaintiff alleged that "[r]eleases which have occurred or are threatened to occur at the facility include but are not limited to spills from bulk tanks, leaking drums and tanks, and explosions and resultant leaking from tanks." *Id.* at 480.

One of the insured's policies provided coverage for property damage "caused by an accident and resulting from the ownership, maintenance or use of a covered auto." *Id.* at 484. In analyzing whether the insurer had a duty to defend, the court observed:

> Nowhere in the complaint in the underlying federal action is there any allegation that the contamination resulted from the ownership, maintenance or use of a covered auto. There are no allegations the releases were caused by any particular feature, malfunction or improper operation of Superior's business automobiles. Although we read the federal complaint broadly, there are no facts alleged which are within the coverage of [the policy at issue].

*Id.* The Eighth Circuit in *Interstate Bakeries Corp.* explained the *Superior Equip. Co.* holding as follows:

> [D]espite the fact that [the insured's] business was the transport of waste to the site, at least making it conceivable that the vehicles [the insured] presumably used to deliver hazardous substances to the site were in some way responsible for the release of those substances at the site, the lack of any allegation related to [the insured's] business automobiles defeated [the insured's] claim for a defense under that policy.

*Interstate Bakeries Corp.*, 686 F.3d at 545.

Like the inferences proposed by the insureds in *Superior Equip. Co.* and *Interstate Bakeries Corp.*, an interpretation that a "dialysis center" could be a "good or product intended for bodily consumption" would "require an unacceptable degree of imagination." *Interstate Bakeries Corp.*, 686 F.3d at 545. Equally unacceptable would be an expansive reading that a janitorial company

responsible for cleaning a dialysis facility was also responsible for cleaning "goods or products intended for bodily consumption" that Harris and the Durham Defendants *assume* would be in that facility.

> **3.**      **Harris And The Durham Defendants Fail: (1) To Identify The Good Or Product From Which Harris's Injuries Allegedly Arose; And (2) To Describe How That Good Or Product Is One Intended For Bodily Consumption.**

Notably, neither Harris nor the Durham Defendants even attempt to identify the "good or product" from which Harris's injuries allegedly arose. *See generally* Dkt. Nos. 104–05. They similarly fail to analyze how any such unidentified good or product would be considered one "intended for bodily consumption," *id.*, despite having the burden to do so. *See Est. of Turks*, 206 F. Supp. 2d at 977.

They instead appear to argue that the exception applies because: (1) the dialysis facility could "potentially" contain a good or product; (2) that good or product could "potentially" be one "intended for bodily consumption"; and (3) that good or product "potentially" contained the bacteria that caused Harris's bacterial infections. *See* Dkt. No. 104 at 3–5 (repeatedly citing cases discussing the "potential"-for-coverage standard); Dkt. No. 105 at 34–40 (same). But, as noted above, what Harris and the Durham Defendants ignore is that, while "Missouri law favors insured parties by determining an insurer's duty to defend based on whether certain facts 'give rise to a claim potentially within the policy's coverage,' . . . *use of the word 'potentially' does not render boundless the duty to defend.*"  *Interstate Bakeries Corp.*, 686 F.3d at 544 (emphasis added).

Harris also insinuates that his injuries could have "potentially" arisen from unidentified goods or products used in the dialysis procedure. *See* Dkt. No. 104 at 14–15. But Harris forgets that all allegations in the FAC related to the dialysis procedure itself concern defendants other than Durham. For example, the FAC asserts a claim against Renal Life, Inc. d/b/a Metro East Dialysis ("Renal Life"), and alleges that Renal Life: (1) "negligently and carelessly failed to timely change

diasafe filters," and (2) "negligently and carelessly failed to properly maintain dialysis machines and equipment to minimize the risk of infection in patients." Ex. B at 2–3. In other words, even if the Court assumed that dialysis equipment could be considered a "good or product intended for bodily consumption," the exception still would not apply because Harris's claim arising from the alleged "fail[ure] to properly maintain dialysis machines and equipment to minimize the risk of infection in patients" was directed to Renal Life, not the building janitor, Durham.[8]

The fact that Harris's infections did not come from a good or product intended for bodily consumption is also clear from expert testimony cited by the trial court, which the Durham Defendants inexplicably submitted in an altered state in their statement of facts. Specifically, pages 7–8 of the *actual* Judgment entered by the trial court states that Harris's expert opined that Durham's negligence "creat[ed] an environment where infection is easily spread between ***patients and staff***." Dkt. No. 106-13 at 7–8 (emphasis added) (Insurer-Defendants' Exhibit K). The bold text, found on page 8 of the Judgment, demonstrates that Harris's expert believed that Durham's failure to clean the facility led to bacteria being transferred from the staff to Harris. The judgment attached to the Durham Defendants' brief ("the Altered Judgment") swaps out page 8 for page 2 of the actual Judgment, so the sentence reads: "creat[ed] an environment where infection is easily spread between dialysis center." Dkt. No. 105-2 at 6–7 (Durham Defendants' Exhibit A).

---

[8] Harris does cite two cases in passing, neither of which were decided under Missouri law, holding that water in hotel hot tubs, spa tubs, and guest room showers could be considered a "good or product intended for bodily consumption." *See Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367 (N.D. Ga. 2009); *Westport Ins. Corp. v. VN Hotel Grp., LLC*, 761 F. Supp. 2d 1337 (M.D. Fla. 2010), *aff'd*, 513 F. App'x 927 (11th Cir. 2013). Even if those decisions were correctly decided, and even if they applied Missouri law, Harris's reliance upon them would be unavailing in this instance. He makes no attempt to explain how these cases inform the analysis in this case, which involves a patient who contracted bacterial infections at a dialysis facility, and a record that is devoid of any evidence that those infections came from any "goods or products intended for bodily consumption" that Durham failed to clean properly. To the extent Harris is claiming that his infections came from water, he points to no allegations against Durham that would support such a conclusion. *See, e.g., Esicorp, Inc.*, 193 F.3d at 969 (observing that the focus is on the "complaint against the insured"). .

Suggesting this alteration of evidence may have been intentional is that handwritten numbers appear at the bottom of the Altered Judgment, which do not exist in the actual Judgment. The Durham Defendants' version of this document appears to have been altered so the Court could not see this testimony, which plainly demonstrates that Harris's infections came from the staff at the dialysis facility, not a "good or product intended for bodily consumption."

Summary judgment should accordingly be granted in favor of Ohio Security because it is undisputed that the Bacteria Exclusion applied to Harris's claims.

**D.      Ohio Security's Investigation Was Reasonable In Light Of The Facts Alleged And Known At The Outset Of The Case.**

Harris and the Durham Defendants also appear to argue (vaguely) that Ohio Security had a duty to defend because its investigation was somehow unreasonable. This argument also fails.

Applying irrelevant tests, Harris asserts that Ohio Security "failed to perform even a cursory investigation into the mechanism of Plaintiff's dialysis treatment." Dkt. No. 104 at 13. Even assuming he means "the mechanism of Plaintiff's injury," Harris is wrong; Ohio Security already had that information in its possession since Harris alleged that his bacterial infections arose from Durham's failure to clean the dialysis center. SUF ¶ 4. Harris cites no authority supporting the notion that an insurer is required to undertake an extensive investigation into the "mechanism" of injury where that information is plainly spelled out in the complaint.

The Durham Defendants go further than Harris on this issue, arguing that Ohio Security's investigation was unreasonable because: (1) Anderson did not recall evaluating "whether Missouri or Illinois law applied"; (2) Anderson did not recall looking up the "definition[] of . . . bacteria"; (3) Anderson did not "seek to obtain a copy of the court file nor [sic] if there had been any depositions taken in the case"; (4) Anderson did not "seek Harris's medical records"; and (5) Anderson "undertook literally no medical research" and did not consult "resources to medical questions." Dkt. No. 105 at 36–37.

As to (1), the Durham Defendants cite no authority supporting the argument that an insurer breaches its duty to defend where its claims adjuster simply could not recall—four years after her evaluation—whether she made a determination regarding which state law would govern an eventual dispute concerning the insured's policy. *See generally* Dkt. No. 105. In any event, Hilgemann, the one ultimately responsible for sending the denial letter, testified that he understood "Missouri state law" would apply. Ex. G at 16:12–14, 17–24.

As to (2), the Durham Defendants fail to explain how the definition of bacteria would have impacted Ohio Security's analysis. The FAC and Certificate of Merit alleged that Harris suffered from "***bacterial***" infections resulting the Durham Defendants' failure to clean a "dialysis center." SUF ¶¶ 4–8 (emphasis added). No reasonable person needs to consult a dictionary to know that these allegations describe "bodily injury" arising from the "inhalation of, ingestion of, contact with, exposure to, existence of, or presence of . . . ***bacteria*** on or within a building or structure, including its contents . . ." *Id.* ¶ 15 (emphasis added).

As to (3)–(5), the Durham Defendants fail to appreciate that Missouri law does not require insurers to conduct such far-reaching investigations. As the Durham Defendants admit, whether an insurer has a duty to defend is determine "at the commencement of the suit and not the proof made therein or the final result reached." Dkt. No. 105 at 37–38. In other words, the determination is made based on "the cause of action pleaded, at the time the action is commenced, *not from what an investigation . . . of the case may show*." *Trainwreck W. Inc.*, 235 S.W.3d at 39 (citing *Inter-State Oil Co. v. Equity Mut. Ins. Co.*, 183 S.W.2d 328, 332 (Mo. App. Ct. 1944)) (emphasis added).

For this reason, the Eighth Circuit in *Esicorp., Inc.* rejected an insured's challenge to the reasonableness of its insurer's investigation, noting that "the duty not to ignore 'actual facts' as defined by the Supreme Court of Missouri in *Marshall's* does not mean the insurer has an

affirmative duty to conduct a far-reaching investigation of the facts underlying the third party's claims." *Esicorp, Inc.*, 193 F.3d at 969 n.1. The Eighth Circuit further stated:

> Of course, as Liberty Mutual acknowledged in refusing SLT's tender of defense, if the insured later submits an amended pleading or additional facts that suggest the presence of covered claims, the insurer has an obligation to reconsider its refusal to defend. But there is no evidence that SLT made such a submission. Thus, we focus on what "should have been reasonably apparent" from Esicorp's complaint.

*Id.*

Similar to *Esicorp, Inc.* is *Trainwreck W. Inc.*, where the Missouri Court of Appeals rejected an insured's argument that its insurer failed to conduct a reasonable investigation by failing to interview the "eight witnesses deposed in the underlying matter" before denying coverage under an "assault or battery" exclusion. *Trainwreck W. Inc.*, 235 S.W.3d at 41. Specifically, the court found that the insured's argument was "unavailing" because "the allegations contained within [the underlying claimant's] Petition and the actual facts provided to [the insurer] by [the insured] established a claim for damages arising out of an assault and battery and therefore, [the insurer] did not have a duty to defend at the time it denied the claim." *Id.*

Like the insurers in *Esicorp, Inc.* and *Trainwreck W. Inc.*, Ohio Security had no duty to conduct the extensive investigation that Defendants suggest is required. The FAC and Certificate of Merit unambiguously asserted that Harris suffered from bacterial infections. Those infections resulted from the Durham Defendants' failure to clean a dialysis center, which no party contends is a "good or product intended for bodily consumption."  In any event, an extensive investigation would not change the result since *there were no other "actual facts"* that would have changed the analysis (notwithstanding Ohio Security's invitation to the Durham Defendants to submit any such information for consideration).

Indeed, neither Harris nor the Durham Defendants describe the "actual facts" Ohio Security could have uncovered that would have changed the coverage determination. As an initial matter,

there is no record evidence that the "depositions" and "medical records" cited by the Durham Defendants were ever brought to Ohio Security's attention, or available as of the time the FAC was filed. *See generally* Dkt. Nos. 104–05. With respect to "medical resources," Anderson testified that she "possibly" reviewed such resources. Ex. F at 127:18–128:3. In any event, there is nothing in the record describing what those resources were other than Hilgemann's deposition testimony that they would not have included access to medical professionals. Ex. G at 76–77.

More importantly, the Missouri Court of Appeals in *Trainwreck W. Inc.* found that extensive investigations in the face of unambiguous pleadings are not required, particularly where the investigation would not change the analysis. As the court noted: "[a]ssuming *arguendo* that [the insurer] should have considered the facts established in the deposition testimony at the time it denied the claim, those facts do not contradict the allegations set out in [the underlying plaintiff's] Petition." *Trainwreck W. Inc.*, 235 S.W.3d at 41. Here, neither Harris nor the Durham Defendants state the "actual facts" demonstrating either: (1) that Harris's injuries were not bacterial, or (2) that Harris's infections came from bacteria on a "good or product intended for bodily consumption."

Nor could they, as Harris's expert—who was not deposed until July 1, 2019—testified that Harris's infections were bacterial. SUF ¶ 40. As to the "mechanism" of Harris's injuries, his expert's report stated the following:

> 1. Durham Enterprises, Inc. d/b/a City Wide Maintenance of St. Louis was performing the janitorial services at this Davita dialysis facility. Between February 2016 and August 2016, Durham was not properly cleaning *the facility* and was negligent in the following respects:
>
>    a.   used vinegar as primary cleaning agent;
>    b.   used dirty mop heads;
>    c.   failed to clean all touchable surfaces, including door handles, paper towel dispensers, and chair arms;
>    d.   failed to disinfect cleaning cart upon entry and exit to the facility;
>    e.   moved machines but failed to disinfect surfaces.

Ex. M at Exhibit 1. At no point in either his expert report, or his deposition, does Harris's expert identify anything that could qualify as a "good or product intended for bodily consumption."   In fact, he appears to have stated the opposite in his opinion—which is misrepresented in the Durham Defendants' statement of facts—that Durham's negligence "creat[ed] an environment where infection is easily spread *between patients and staff*."  Dkt. No. 106-13 at 7–8 (emphasis added) (Insurer-Defendants' Exhibit K).

Here, the only evidence that was reasonably apparent from the information provided by the Durham Defendants was that Harris contracted bacterial infections as a result of Durham's failure to properly clean a dialysis center. Ohio Security did invite the Durham Defendants to provide any amended pleadings or additional facts that might suggest the presence of covered claims, much like the insurer in *Esicorp, Inc.* SUF ¶¶ 23–24. But like the insured in *Esicorp, Inc.*, the Durham Defendants never contacted Ohio Security after receiving the denial letter. On these facts, Ohio Security did not have a duty to conduct a far-reaching investigation involving a review of depositions not yet taken, records not yet produced, and discovery not yet served.

\* \* \*

Simply put, the Bacteria Exclusion applied "at the outset of the case," and Ohio Security did not owe the Durham Defendants a duty to defend. That should be the end of this case, since an insurer that does not owe a duty to defend, cannot owe a duty to indemnify. *See Trainwreck W. Inc.*, 235 S.W.3d at 44 (observing that where there is no duty to defend, there can be no duty to indemnify).

## II. It Is Undisputed That Ohio Casualty Had No Duty To Defend.

Neither Harris nor the Durham Defendants contend that Ohio Casualty had a duty to defend the Durham Defendants under the Ohio Casualty Policy. *See* Dkt. Nos. 104–05 (Harris and the Durham Defendants failing to move for summary judgment on the issue of whether Ohio Casualty

owed a duty to defend). The absence of this argument is dispositive, as "the insured bears the burden of proving coverage under an insurance policy," *Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 187 (Mo. Ct. App. 2012), and "[a]rguments raised for the[e] first time in reply are waived." *Illinois Nat. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, No. 12-CV-2300, 2013 WL 1196598, at *7 (N.D. Ill. Mar. 22, 2013) (citations omitted); *see also Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) ("[Defendant] did not develop this argument in his initial brief before this court, raising it in a meaningful way only in his reply brief, so it is waived.").

The Court should therefore grant summary judgment in favor of Ohio Casualty. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, *and on which that party will bear the burden of proof at trial*.") (emphasis added).

## III.     It Is Undisputed That Liberty Mutual Did Not Underwrite The Ohio Security Policy.

Neither Harris nor the Durham Defendants offer any evidence that Liberty Mutual underwrote the Ohio Security Policy. *See generally* Dkt. Nos. 104–05. Harris concedes as much by recognizing that "Liberty Mutual has disclaimed participation in issuing the Durham policy," yet failing to cite any evidence to the contrary. Dkt. No. 104 at 2 n.1. Indeed, Harris admits that his brief "does not address which corporate entity enacted policy." *Id.* The Durham Defendants' brief fares no better, as it baselessly lumps Ohio Security and Liberty Mutual together as if they were the same corporate entity. *See* Dkt. No. 105 at 6 (defining "Liberty Mutual" as "Ohio Security Insurance [sic]/Liberty Mutual Insurance Company").

Of course, the identity of the underwriting company is dispositive since "the duty to defend is a contractual obligation." *Esicorp, Inc.*, 193 F.3d at 970; *see also Underwriting*, Black's Law Dictionary (11th ed. 2019) (defining "underwriting" as "[t]he act of assuming a risk by insuring

it"). As a result, where an insurer "did not even issue a policy to the [insured] for the period in question, there is no coverage possible for the Underlying Suit, and that [insurer] is entitled to judgment as a matter of law." *Luken*, 2014 WL 2157388, at *6 (granting summary judgment in favor of three insurers that "did not issue any liability policy to the [insured]"); *see also Bruegge*, 2014 WL 2535947, at *2 (Gilbert, J.) (dismissing claims for "breach of insurance contract and bad faith failure to pay a claim" against insurer that did not issue the relevant policy, reasoning that "[t]here is no basis . . . for holding [the insurer] liable for a contract to which it was not a party").

All record evidence demonstrates that Ohio Security was the underwriter of the Ohio Security Policy. *See* SUF ¶ 49; Ex. G at 15:21–22. The Court should accordingly deny Harris and the Durham Defendants' motions for summary judgment insofar as they seek to hold Liberty Mutual liable under a contract to which it is not a party, and grant summary judgment on all claims in favor of Liberty Mutual.

## IV.   The Insurer-Defendants Are Not Collaterally Estopped From Contesting The Duty To Indemnify.

The Durham Defendants also argue that the Insurer-Defendants are collaterally estopped from contesting the issue of indemnity. *See* Dkt. No. 105 at 39–44. This argument not only violates the Court's order bifurcating the issues of defense and indemnity, it also flatly contradicts the Court's previous ruling on this issue. *See* Dkt. No. 63 at 6–8 (holding that the Insurer-Defendants are not collaterally estopped from litigating coverage). The Court should therefore deny the Durham Defendants' motion for summary judgment insofar as it impermissibly (and incorrectly) argues that the Insurer-Defendants are collaterally estopped from litigating issues of indemnity.

## CONCLUSION

For the foregoing reasons, the Court should deny the motions for summary judgment filed by Harris and the Durham Defendants, and grant summary judgment in the Insurer-Defendants' favor on all claims.

Dated: July 16, 2021                         Respectfully Submitted,

                                             **OHIO SECURITY INSURANCE
                                             COMPANY, LIBERTY MUTUAL
                                             INSURANCE COMPANY and THE
                                             OHIO CASUALTY INSURANCE
                                             COMPANY**

                                      By:    _/s/   Matthew O. Sitzer_____
                                             One of Their Attorneys

Matthew O. Sitzer (#6210083)
Matthew C. Wolfe (#6307345)
Peter F. O'Neill (#6324429)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive, Suite 4700
Chicago, Illinois 60606
Telephone:  (312) 704-7700
Facsimile:  (312) 558-1195
msitzer@shb.com
mwolfe@shb.com
pfoneill@shb.com

21

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew O. Sitzer, an attorney, hereby certify that, on **July 16, 2021**, I caused a true and complete copy of the foregoing **INSURER-DEFENDANTS' RESPONSE TO THE MOTIONS FOR SUMMARY JUDGMENT FILED BY TOMMY HARRIS AND BY DON DURHAM AND DURHAM ENTERPRISES, INC.** to be filed electronically. Notice of this filing will be sent to all parties below registered on this Court's CM/ECF system. Parties may access this filing through the Court's system.

Samantha Unsell
**KEEFE, KEEFE & UNSELL, P.C.**
#6 Executive Woods Court
Belleville, Illinois 62226
Telephone:  (618) 236-2221
Facsimile:  (618) 236-2194
Email: ashley@tqkeefe.com
           samunsell@gmail.com

*Counsel for Tommy Harris*

Ted F. Frapolli
**LAW OFFICES OF TED F. FRAPOLLI**
1714 Deer Tracks Trail, Suite 200
St. Louis, Missouri 63131
Telephone:  (314) 993-4261
Facsimile:  (314) 993-3367
Email: ted@tffrapollilaw.com

*Counsel for Durham Enterprises, Inc. and
Don Durham*

_/s/  Matthew O. Sitzer_

4814-4991-4865