UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOMMY HARRIS,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>DURHAM ENTERPRISES, INC., and DON DURHAM,<br><br>    Defendants/Crossclaim Plaintiff/<br>    Crossclaim Defendants,<br><br>and<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>    Defendant/Crossclaim Defendant<br><br>and<br><br>OHIO SECURITY INSURANCE COMPANY,<br><br>    Defendant/Counterplaintiff/Crossclaim<br>    Plaintiff/Crossclaim Defendant,<br><br>and<br><br>OHIO CASUALTY INSURANCE COMPANY,<br><br>    Intervenor Defendant/Counterplaintiff/<br>    Crossclaim Plaintiff | Case No. 20-cv-72-JPG |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on a host of summary judgment motions seeking resolution of an insurance coverage issue central to this case. The case involves injury to plaintiff Tommy Harris caused by defendants Don Durham and Durham Enterprises, Inc. ("the Durham Defendants"), which is insured with a commercial package insurance policy by Liberty Mutual Insurance Company ("LMIC") and/or Ohio Security Insurance Company ("OSIC"), and

with a commercial umbrella insurance policy by Ohio Casualty Insurance Company ("OCIC") (collectively, "the Insurance Defendants"). Specifically, the Court considers the following cross-motions for summary judgment addressing the issue of the Insurance Defendants' duty to defend the Durham Defendants from Harris's negligence lawsuit:

- Harris's (Doc. 104) and the Durham Defendants' (Doc. 105) motions for summary judgment, to which the Insurance Defendants have responded (Doc. 107 & 108); and

- the Insurance Defendants' motion for summary judgment (Doc. 106), to which the Durham Defendants (Doc. 118) and Harris (Doc. 114) have responded. The Insurance Defendants have replied (Doc. 119) to those responses.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).

**I.     History of Case**

This case arose after Harris was injured by an infection he contracted at a dialysis center for which the Durham Defendants provided commercial cleaning services. The Court summarized the factual and procedural history of this case in an earlier order:

> Harris first brought a claim against the Durham [D]efendants (using their d/b/a name, City Wide Maintenance of St. Louis) in the First Amended Complaint filed in Case No. 17-L-7 in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, on April 19, 2017. The certificate of merit attached to the First Amended Complaint indicates that Harris suffered from bacterial sepsis.
>
> The Durham [D]efendants tendered the defense to OSIC, which had issued a commercial package insurance policy ["the Policy"] including commercial general liability coverage to the Durham [D]efendants covering the relevant period. . . . On May 15, 2017, OSIC denied coverage and refused the defense, citing the bacteria policy exclusion.
>
> The Circuit Court severed Harris's case against the Durham [D]efendants into a new lawsuit—this lawsuit, State Case No. 19-L-234—and held a bench trial in the new case on July 30, 2019. At trial, the Durham [D]efendants informed the court

> that they had agreed with Harris that they would not mount a defense to the case and that, in turn, Harris would limit its recovery and would not seek to execute any judgment against Harris but would instead pursue the judgment only against the Durham [D]efendants' insurer. The Circuit Court entered judgment in Harris's favor in the amount of approximately $2 million, finding that the Durham [D]efendants were negligent in cleaning the dialysis facility. That order further found facts and drew legal conclusions adverse to "Ohio Security/Liberty Mutual Insurance Company," even though they were not parties to the case. Specifically, the Circuit Court found that OSIC had a duty to defend the Durham [D]efendants in Harris's lawsuit and that it was too late for OSIC to seek a declaration otherwise.
>
> On December 7, 2019, nearly two months after entry of judgment in the severed state court Case No. 19-L-234 against the Durham [D]efendants, Harris amended his complaint in that case realleging the claims already decided in the bench trial and adding new declaratory judgment claims for insurance coverage against OSIC. Believing that all plaintiffs were diverse from all defendants and that more than $75,000 was in issue, OSIC removed the case to federal court based on the Court's original diversity jurisdiction.

Mem. & Order 2-4 (Oct. 26, 2020; Doc. 63). The matter now comes before the Court for a decision whether the Insurance Defendants[1] owed the Durham Defendants a duty to defend them in Harris's claims in this very case during its tenure in state court as Case No. 17-L-7.

**II.    Facts**

The evidence establishes the following relevant facts for the purposes of the pending summary judgment motions.

    A.    <u>The Policy</u>

All parties agree that the Insurance Defendants issued the Policy[2] to the Durham Defendants covering sums they become obligated to pay because of "bodily injury" covered by the Policy. O'Neill Aff. Ex. E, OSIC Package Policy, § I, CGL Coverage A (Doc. 106-7 at 174-

---

[1] At this point, it does not matter which particular defendant may have owed a duty to defend, so the Court considers them as one for the moment.
[2] Again, it is not important to distinguish the insurers or the policies issued in this case because both policies contain essentially the same terms in this regard.

3

75). The Policy contains a coverage exclusion for fungi or bacteria:

> This insurance does not apply to:
>
> **Fungi or Bacteria**
> a. "Bodily injury" . . . which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.
>
> This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

O'Neill Aff. Ex. E, Policy, Fungi or Bacterial Exclusion ("Bacteria Exclusion") ¶ A.2 (Doc. 106-7 at 196).

### B. Harris's Tort Suit

Harris filed his First Amended Complaint in state case No. 17-L-7 on April 19, 2017. In it, he alleged that the Durham Defendants "provid[ed] commercial cleaning services to the dialysis center" in which Harris received dialysis treatment, and "negligently and carelessly failed to properly clean and sanitize said dialysis center" causing Harris to suffer numerous infections. O'Neill Aff. Ex. B, First Am. Comp. ¶ 4 of Count I, ¶ 5(a) of Count III (Doc. 106-4 at 8, 11-12). Attached to the First Amended Complaint was an affidavit of merit from Harris's counsel and a certificate of merit from a medical doctor as required by the Illinois Healing Art Malpractice Act, 735 ILCS 5/2-622(a). The certificate of merit opined that the dialysis facility operator and its agents "fail[ed] to properly sanitize the dialysis facility," placing Harris "at significantly increased risk of bacterial sepsis," and that Harris was indeed "diagnosed with both

gram positive and gram negative sepsis" during the relevant time period.  O'Neill Aff. Ex. B, Cert. of Merit (Doc. 106-4 at 6).

      C.      Insurers' Decision

When the Durham Defendants tendered the defense to the Insurance Defendants on May 5, 2017, they provided the Insurance Defendants with a copy of the First Amended Complaint, along with the affidavit from Harris's counsel and physician's certificate of merit.  The Insurance Defendants declined the tender, citing the "Fungi and Bacterial Exclusion."  O'Neill Aff. Ex. E, May 15, 2017, Letter (Doc. 106-7 at 114-18).  The denial letter invited the Durham Defendants to send any additional information they would like the Insurance Defendants to consider with regard to Harris's case, but the Durham Defendants never sent anything else.

Emily Anderson, the claims adjuster who considered the Durham Defendants' claim, rested her recommendation of denial on a comparison of the content of the First Amended Complaint and its attachments, which referred to bacterial infections because the dialysis facility was negligently cleaned, with the content of the Policy.  She did not seek any other information regarding the matter such as Harris's medical records, the court file, depositions completed in discovery, or advice from her medical resources.  Her only thought for more information was to invite the Durham Defendants to send any further information they would like considered. Manager Joshua Hilgemann accepted Anderson's recommendation without conducting any further research and approved the final denial of coverage.  The denial letter did not address the exception to the Bacteria Exclusion from "a good or product intended for bodily consumption," which the Court will refer to as the Bodily Consumption Exception.  The Insurance Defendants did not seek a declaratory judgment regarding coverage.

     D.     State Court Decision

The Court acknowledges that the ultimate result of the trial is not relevant to the question whether the Insurance Defendants had a duty to defend at the time of tender. *See McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). Nevertheless, the Court finds it gives context to this entire matter.

When Harris's claims against the Durham Defendant went to trial in state court as Case No. Case No. 19-L-234, the Court made the following factual findings:

> Durham Enterprises, Inc. . . . . was performing janitorial services at a dialysis center [at which Harris received dialysis] from December 2015 until August 2016.
>
> * * *
>
> The only evidence in the case regarding Durham's negligence comes from plaintiff's infectious disease expert, Dr. Tsalik. Dr. Tsalik's report and testimony very clearly state that Durham was negligent in failing to properly clean the facility. Specifically, Durham used vinegar as the primary cleaning agent, used dirty mop heads, and failed to clean all touchable surfaces.
>
> Thus, the Court finds Durham negligent in failing to properly clean the facility.
>
> * * *
>
> The only evidence regarding causation again comes from plaintiff's expert, Dr. Tsalik. Dr. Tsalik's report and testimony very clearly establish that as a result of Durham's failure to properly clean the facility plaintiff suffered a series of infections and infection related complications which resulted in damages to the plaintiff.
>
> Therefore, the Court finds that the proximate cause of plaintiff's damages is Durham's negligence.

Order (Oct. 9, 2019) (Doc. 1-1 at 26-27, 37-38).

**III.**    **Analysis**

     A.     Duty to Defend

When a federal court is exercising its diversity jurisdiction, as it is here, it applies state

6

substantive law. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). All parties agree that Missouri's substantive insurance law applies to this case.[3] The Court must apply that law as it believes the highest state court—here, the Missouri Supreme Court—would apply it if it were hearing the issues. *See State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). When the highest state court has not spoken on an issue, the federal court must give great weight to decisions of intermediate appellate courts unless there are persuasive reasons to believe the highest court would rule differently. *Id.*

Under Missouri law, "[a]n insurance company has a duty to defend where the insured is exposed to potential liability based on the facts known at the outset of the case no matter how unlikely it is that the insured will be found liable." *City of Lee's Summit v. Mo. Pub. Entity Risk Mgmt.*, 390 S.W.3d 214, 219 (Mo. Ct. App. 2012); *accord McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). The insured bears the burden of proving coverage under the policy, and the insurer bears the burden of showing an exclusion from coverage applies. *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 543 (8th Cir. 2012).

The Missouri Supreme Court explains:

> The duty to defend arises only when there is a possibility or potential for coverage at the outset of the case. The duty to defend is determined by comparing the insurance policy language with facts: (1) alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case. If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend.

---

[3] The Court is puzzled why Harris and the Durham Defendants have changed their position on the appropriate choice of law since the state court decision of Harris's tort claim. There, they took the position that Illinois insurance law governed the insurers' duty to defend under the subject policies. They now urge application of Missouri law.

*Allen v. Bryers*, 512 S.W.3d 17, 31 (Mo. 2016), *as modified* (Apr. 4, 2017) (internal quotations and citations omitted); *see Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 513 (Mo. 2017); *McCormack Baron*, 989 S.W.2d at 170.  Other courts have also phrased the test to include consideration of facts that "could reasonably be ascertained by the insurer that would potentially put the claim within the scope of the policy," *Penn-Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 597 (Mo. Ct. App. 2010), *cited by Allen v. Bryers*, 512 S.W.2d at 31, or that the insurer "could have learned from a reasonable investigation at the time the lawsuit was filed," *Interstate Bakeries*, 686 F.3d 542 (internal quotations omitted).  Nevertheless, "use of the word 'potentially' does not render boundless the duty to defend."  *Interstate Bakeries*, 686 F.3d at 544. *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 41 (Mo. Ct. App. 2007).  Courts should not exercise an "unacceptable degree of imagination" to bring a claim within policy coverage.  *Interstate Bakeries*, 686 F.3d at 545.

The existence of the duty to defend is determined at the time the underlying action is commenced, not on facts discovered in a later investigation or ultimately ascertained at trial. *McCormack Baron*, 989 S.W.2d at 170; *Interstate Bakeries*, 686 F.3d at 542; *see Trainwreck*, 235 S.W.2d at 42-43 (later deposition testimony did not contradict allegations in the pleading or the actual facts known to the insurer at the time coverage was requested).  And when an insured claims that facts showing coverage were ascertainable by the insurer through reasonable investigation, there must be evidence of what the insurer would have found in a reasonable investigation at that time that would have brought the claim within the policy's coverage. *Interstate Bakeries Corp.*, 686 F.3d at 546 (citing *Custom Hardware Eng'g & Consulting, Inc. v. Assur. Co. of Am.,* 295 S.W.3d 557, 562 n.6 (Mo. Ct. App. 2009)).

8

B. <u>Potential Policy Coverage</u>

The question of whether there was a duty to defend the Durham Defendants against Harris's tort suit requires examining three successive coverage questions: Was Harris's tort claim (1) within the Policy's general grant of coverage for bodily injury? (2) within the Bacteria Exclusion? and (3) within the Bodily Consumption Exception to the Bacterial Exclusion? In answering these questions, the Court considers whether it was known or reasonable ascertainable—at the time Harris commenced his action against the Durham Defendants and the Durham Defendants tendered the defense to the Insurance Defendants—that Harris's claim was potentially covered by the Policy.

Under Missouri law, interpreting an insurance policy, even an ambiguous policy, is a matter of law. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. 1999); *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 543 (8th Cir. 2012). In interpreting a policy, the Court must attempt to effectuate the parties' intention as expressed by the plain and ordinary meaning of the terms of the policy read in the context of the policy as a whole. *Interstate Bakeries*, 686 F.3d at 543 (citing *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. 1973)). The Court should find that an insurance policy means what "an ordinary person of average understanding . . . purchasing insurance" would think it means. *McCormack Baron*, 989 S.W.2d at 171. Nevertheless, where a policy is subject to more than one reasonable interpretation, it must be construed in favor of the insured. *Gulf Ins. Co. v. Noble Broad.*, 936 S.W.2d 810, 814 (Mo. 1997) (*en banc*). Particularly with respect to exclusions from coverage, the language must be construed narrowly and in favor of coverage. *Harrison v. Tomes*, 956 S.W.2d 268, 270 (Mo. 1997) (*en banc*).

1. General Grant of Coverage

Harris's First Amended Complaint in state case No. 17-L-7, filed on April 19, 2017, clearly alleged a claim falling generally under the Policy's "bodily injury" coverage absent application of any exclusion. He alleged that the Durham Defendants' negligent and careless failure to properly provide commercial cleaning services to the dialysis center caused Harris to become infected. No party seriously disputes this.

2. Bacteria Exclusion

The first dispute arises over whether the Bacteria Exclusion, not considering the exception to the exclusion, would apply to exclude the Durham Defendants' liability to Harris from the Policy's coverage. As noted above, to determine this question, the Court compares the Policy language with the facts in the First Amended Complaint as well as the facts the insurer knows or can reasonably ascertain at the outset of the case. *See Allen v. Bryers*, 512 S.W.3d 17, 31 (Mo. 2016), *as modified* (Apr. 4, 2017). The Policy excludes from coverage bodily injury that would not have occurred but for the existence of bacteria in a building regardless of any other causes contributing to the injury. Thus, if the First Amended Complaint and the facts known or reasonably ascertainable by the Insurance Defendants showed that bacteria was a "but for" cause of Harris's injury, the exclusion would apply.

The First Amended Complaint itself pled that Harris suffered from unspecified infections as a result of the Durham Defendants' conduct. This vague allegation left the door open for infections other than bacterial infections that would potentially not be excluded by the Bacterial Exclusion. But that door closed quickly upon consideration of the physician's certificate of merit attached to the First Amended Complaint. The certificate of merit confirmed that the vague allegations in the pleading supported only a cause of action for a bacterial infection.

10

Specifically, it stated that improper sanitation increased Harris's risk for bacterial infections and that he, indeed, suffered from two types of bacterial infections—gram-positive and gram-negative.  *See* WebMD, Difference Between Gram-Positive and Gram-Negative Bacillus, https://www.webmd.com/a-to-z-guides/difference-between-gram-positive-bacillus-gram-negative-bacillus (visited Jan. 14, 2022).

The parties dispute whether the Court should take into account the certificate of merit to shed light on Harris's claims.  Ordinarily, the Court considers the exhibits along with the pleading itself because exhibits are generally considered to be a part of the pleading to which they are attached, and even control when they contradict that pleading.  *See Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007) ("[W]hen a document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint.").

On the other hand, at least one Illinois Appellate Court has held that the certificate of merit required by 735 ILCS 5/2-622(a) to support a healing art malpractice claim should not be read to limit or clarify the substance of the pleading.  *See Garrison v. Choh*, 719 N.E.2d 237, 241-42 (Ill. App. Ct. 1999).  "[T]he health professional report, although attached to the complaint, is not an exhibit to the complaint and therefore cannot supply factual allegations missing from the face of the complaint."  *Id.* at 241.  The *Garrison* court reasoned that a certificate of merit merely attached to a complaint—but not mentioned in or incorporated by it—is not an exhibit to the complaint but simply a procedural prerequisite for filing a healing art malpractice action in Illinois for the purpose of avoiding frivolous lawsuits.  *Id.* at 243-44.

The Court need not decide whether to consider the physician's certificate of merit as part of Harris's First Amended Complaint itself because it is clear that, even if it were not, it would

11

certainly be part of the information known to or reasonably ascertainable by the Insurance Defendants when making their coverage decision. Where Harris's pleading alleged that negligent cleaning led to infections, and a required attachment to that pleading showed the infections were bacterial, the Court will not force the Insurance Defendants to put blinders on and proceed as if it did not know the nature of the infections. The remote possibility that there might have been some viral infection lurking in the background is simply too speculative to survive the Bacteria Exclusion, especially since the Durham Defendants have not pointed to any evidence the Insurance Defendants could have discovered to bring the claim out of the exclusion. To the extent the Insurance Defendants must consider the pleading *and* the actual facts of which it was aware at the time the tort suit was filed, they were certainly actually aware that Harris's infections were bacterial. Thus, Harris's claim was excluded from coverage by the Bacteria Exclusion on its face.

Additionally, the Durham Defendants have not pointed to any actual facts supporting some other kind of infection that the Insurance Defendants could reasonably have found had they conducted further investigation. For this reason, the Court finds that, unless the Bodily Consumption Exception applies, the Durham Defendants' liability from Harris's bodily injury falls squarely within the Bacterial Exclusion.

### 3. Bodily Consumption Exception

That leaves open the question whether Harris's claim, falling within the Bacteria Exclusion on its face, potentially fell within the Bodily Consumption Exception to the Bacteria Exclusion. More accurately, the real question is whether the Insurance Defendants knew or could have ascertained through a reasonable investigation that Harris's claims were potentially within that exception. There must be some basis for considering that the exception might apply,

for as the Eighth Circuit Court of Appeals pointed out in *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 544 (8th Cir. 2012), "use of the word 'potentially' does not render boundless the duty to defend." Just because it is humanly possible to imagine a circumstance that might fall within the exception does not mean there is a duty to defend where that imagined situation is too speculative and reaches too far beyond the known or ascertainable facts. *See id.* at 545. Fitting Harris's claim within the Bodily Consumption Exclusion would require such "an unacceptable degree of imagination." *Id.*

The Bodily Consumption Exception excepts from the Bacteria Exclusion bodily injury or losses caused by "bacteria that are, are on, or are contained in, a good or product intended for bodily consumption." O'Neill Aff. Ex. E, Policy, Fungi or Bacterial Exclusion ("Bacteria Exclusion") ¶ A.2 (Doc. 106-7 at 196). Courts considering the Bodily Consumption Exception in the past have looked to dictionary definitions of the specific terms. A number of these cases focus on hot tub or fountain water contaminated by *Legionella*, the bacteria that causes Legionnaires' disease. For example, in *Nationwide Mutual Fire Insurance Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1379 (N.D. Ga. 2009), a court found that hot tub water was a good intended for bodily consumption because it was intended to be used by the body for satisfaction of wants. In that case, the complaint specifically pled that the injured person inhaled or ingested vapor from the rapidly circulating whirlpool water. *Id.* at 1370. *See, also, Shree Ganesh, Inc. v. Argonaut Great Cent. Ins. Co.*, No. 413CV00398SMRHCA, 2015 WL 12517436, at *13 (S.D. Iowa June 15, 2015) (applying *Dillard House*'s reasoning to bacteria in hotel's hot tub); *Westport Ins. Corp. v. VN Hotel Grp., LLC*, 761 F. Supp. 2d 1337, 1347 (M.D. Fla. 2010), *aff'd*, 513 F. App'x 927 (11th Cir. 2013) (same with respect to hotel's spa and shower water); *Union Ins. Co. v. Soleil Grp., Inc.*, No. 2:07-CV-3995-PMD, 2009 WL 8652923, at *6 (D.S.C. May 13,

13

2009) (finding contaminated water in hotel's swimming pool, whirlpool tub, and bathroom was *intended* for consumption regardless of whether it was *actually* consumed). Coming out the other way was *Heinecke v. Aurora Healthcare, Inc.*, 841 N.W.2d 52, 58 (Wis. Ct. App. 2013), where the court found contaminated water in a decorative fountain was not intended for consumption because it was intended for observation, not for eating, drinking, or using up by a human body.

Taking the First Amended Complaint at face value, no allegation would have given the Insurance Defendants any clue that Harris's infections were potentially caused by bacteria in or on a good or product intended for human consumption, even given the broadest definition of those terms. On the contrary, the pleading alleges the Durham Defendants provided commercial cleaning services and did not, as the *Dillard House* plaintiff did, suggest a means by which the negligent cleaning services could have resulted in the presence of bacteria in or on a good or product intended for bodily consumption and then actually consumed by Harris. Commercial cleaning services are commonly understood to include things like cleaning tiles, floors, walls, furniture, carpets, lighting, ceilings, windows, kitchens, and bathrooms. The closest that such activities would reasonably get to goods or products intended for human consumption is the kitchen or the bathroom, but there commercial cleaners refill soap dispensers and clean surfaces, not food, water, or other items intended to be consumed by an individual's body, that is, for eating, drinking, or using up. *See* Oxford English Dictionary, Consumption, https://www.oed.com/view/Entry/39997?redirectedFrom=consumption#eid (visited Feb. 7, 2022) (the most contextually apt definition being "[t]he action or fact of eating or drinking something, or of using something up in an activity"). There is simply nothing in the Amended Complaint that could reasonably have placed Harris's claim within the Bodily Consumption

Exception without exercising "an unacceptable degree of imagination."  *See Interstate Bakeries*, 686 F.3d  at 545.

To the extent the Durham Defendants complain that the Insurance Defendants failed to make a reasonable investigation, that alone cannot warrant coverage where there were no underlying facts showing coverage exists.  The Durham Defendants do not specify what the Insurance Defendants should have ascertained had they conducted such an investigation that would have indicated that Harris's claim fell within the Bodily Consumption Exception to the Bacteria Exception.  The Durham Defendants cannot simply rely on the Insurance Defendants' failure to conduct a more thorough investigation; they must point to facts that the Insurance Defendants could have ascertained at the time the defense was tendered that would have brought Harris's claim within the exception.  They point to the state court file, depositions that might have already occurred, Harris's medical records, and nebulous medical research about fungi, bacteria or other medical questions.  Nevertheless, there is no evidence of what actual facts could have been ascertained from these or any other sources that would have reasonably suggested that the bacteria in issue could potentially have been, been on, or been contained in "a good or product intended for bodily consumption."

The Court acknowledges that this result may deprive Harris of a substantial remedy for his negligently caused infections, at least from the Durham Defendants.  However, the parties go too far in asserting the Insurance Defendants were in the wrong by failing to exercise the most extreme degree of imagination to bring the Harris's injury within the Bodily Consumption Exclusion.  The duty to defend is broad, but not endless.  This case is simply beyond the outer limits of what is a potentially covered claim.

In sum, there were no allegations and no known or reasonably ascertainable facts

reflected in the record that would have or should have led the Insurance Defendants to find Harris's claim fell within the Bodily Consumption Exception to the Bacteria Exclusion.

    C.    <u>Duty to Defend</u>

Because Harris's tort claim against the Durham Defendants potentially fell within the broad Policy coverage but was, based on the pleading and the facts known or reasonably ascertainable at the time, excluded by the Bacterial Exception and not excepted from the exclusion by the Bodily Consumption Exclusion, the Insurance Defendants had no duty to defend the Durham Defendants from Harris's lawsuit.

## IV. Conclusion

For the foregoing reasons, the Court:

- **DENIES** Harris's (Doc. 104) and the Durham Defendants' (Doc. 105) motions for summary judgment;

- **GRANTS** the Insurance Defendants' motion for summary judgment (Doc. 106);

- **DECLARES** that:

    Defendants Ohio Security Insurance Company and Liberty Mutual Insurance Company owed no duty to defend defendants Don Durham and Durham Enterprises, Inc. d/b/a City Wide Maintenance of St. Louis in the lawsuits *Harris v. Durham Enterprises, Inc. and Don Durham*, Nos. 17-L-7 and 19-L-0234, in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois. under commercial package insurance policy number BKS1657078432;

    and

    Defendant Ohio Casualty Insurance Company owed no duty to defend defendants Don Durham and Durham Enterprises, Inc. d/b/a City Wide Maintenance of St. Louis in the lawsuits *Harris v. Durham Enterprises, Inc. and Don Durham*, Nos. 17-L-7 and 19-L-0234, in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois. under commercial umbrella insurance policy number USO 57078432;

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The Court further **ORDERS** that a status conference be held on March 15, 2022, at 9:00

a.m. by videoconference to discuss how to proceed with the remainder of this case, including the potential consolidation of this case with *Harris v. Liberty Mutual Insurance Co.*, No. 21-cv-1389.

**IT IS SO ORDERED.**
**DATED:  February 22, 2022**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
